M. SEXAUER, Appellant, v. JOHN WILSON and JOHN M. KRAUSA.

136   357
140   279

Covenants running with land: AGREEMENT TO MAINTAIN DIVISION
1  FENCE.   In determining whether a covenant in a deed will run
   with the land the questions are (1) whether the parties in-
   tended to charge the land; and (2) whether the burden is one
   which may be imposed consistently with policy and principle;
   and the intent to charge the land in the hands of grantees may
   be gathered from the language of the instrument though no
   such express words are used; hence an agreement to perpet-
   ually maintain a division fence is a covenant running with the
   land.

Covenants: LIABILITY OF GRANTEE FOR PERFORMANCE.   A grantee in

2  accepting a deed containing covenants to be performed by
him becomes bound for their performance.

**Same.** A grantee is not personally liable upon a covenant running
3  with the land after he has parted with the title.

*Appeal from Polk District Court.*— HON. HUGH BRENNAN,
Judge.

TUESDAY, NOVEMBER 19, 1907.

PLAINTIFF conveyed to John Wilson ten acres of land
out of a half section then owned by him, and in the deed in-
serted this clause: " The grantee herein further agrees to
perpetually maintain a tight fence sufficient to stop hogs and
all other live stock between said land described above and all
property of the grantor herein adjacent thereto." No line
fence then existed, but Wilson erected partition fences, as
agreed, soon thereafter, and maintained them during his oc-
cupancy of the premises, from 1889 until 1904, when he con-
veyed the land to defendant Krausa. The latter immedi-
ately took possession, but failed to keep the fences in repair.
Finally, plaintiff repaired them at an expense of $18, for
which he seeks recovery. Upon proof of the foregoing facts,
the court directed a verdict for defendants. From judg-
ment entered thereon the cause, being properly certified,
plaintiff appeals. *Affirmed* as to Wilson. *Reversed* as to
Krausa.

*Dale & Harvison,* for appellant.

*Miller & Wallingford* and *T. L. Sellers,* for appellees.

LADD, J.— The testimony of plaintiff failed to show the
existence of a division fence at the time the deed was exe-
cuted by him to Wilson containing the latter's
agreement " to perpetually maintain a tight
fence sufficient to stop hogs and all other live-
stock between the land above described and
all property of the grantor herein adjacent thereto." This

1. COVENANTS
RUNNING
WITH LAND:
agreement to
maintain di-
vision fence.

being so, the subject of the covenant was not *in esse,* and, as
the clause does not indicate by the use of the word " assigns "
that the grantee's successors in interest are to be bound, ap-
pellees contend that the covenant was personal, and did not
run with the land.    They rely on *Spencer's* case, 5 Coke, 16,
1 *Smith's Leading Cases,* and authorities in this country in
which it is cited with apparent approval or applied as con-
trolling.   See *Hartung v. Witte,* 59 Wis. 294 (18 N. W.
175); *Gulf, C. & S. F. Ry. Co. v. Smith,* 72 Tex. 122 (9 S.
W. 865, 2 L. R. A. 281); *Newburg Petroleum Co. v. Weere,*
44 Ohio St. 604 (9 N. E. 845); *Bronson v. Coffin,* 108 Mass.
185 (11 Am. Rep. 335); *Ft. Wayne Water Power Co. v.
Board of Commissioners,* 24 Ind. App. 514 (57 N. E. 146);
*Thompson v. Rose,* 8 Cow. (N. Y.), 269; *Hansen v. Meyer,*
81 Ill. 321 (25 Am. Rep. 282); *Woodruff v. Trenton Water
Power Co.,* 10 N. J. Eq. 506; *Lynn v. Mt. Savage Iron Co.,*
34 Md. 603; *Bream v. Dickerson,* 2 Humph. (Tenn.) 126.

*Spencer's* case, as reported by Lord Coke, appears to be
a series of seven resolutions by the judges concerning cove-
nants, " which of them would run with the land, and which
of them are collateral and do not go with the land, and when
the assignee shall be bound, without naming him, and where
not; and where he shall be bound, although he be ex-
pressly named, and where not."   This covered many points
not involved.   It is said in the first resolution that:

When the covenant doth extend to the thing *in esse,*
parcel of the demise, the thing to be done by force of the
covenant is *quodam modo* annexed and appurtenant to the
thing demised, and shall go with the land, and shall bind the
assignee, although he be not bounden by express words; but,
when the covenant doth extend to a thing which is not in
being at the time of the demise made, the same cannot be
appurtenant or annexed to a thing which hath no being.
As if the lessee covenanteth to repair the houses demised to
him during the term, the same is parcel of the contract, and
extendeth to the support of the thing demised, and therefore
is *quodam modo* annexed and appurtenant to houses, and

shall bind the assignee, although he is not bound expressly by the covenant. But in the case at bar the covenant doth concern a thing which was not *in esse* at the time of the demise made, but to be newly built after, and therefore shall bind the covenantor, his executors or administrators, and not the assignee, for the law will not annex the covenant to a thing which hath no being.

Second resolution: " It was resolved in this case, if the lessee had covenanted for him and his assigns that they would make a new wall upon some part of the thing demised, that forasmuch as it is to be done upon the land demised that it should bind the assignee; for, although the covenant doth extend to a thing to be newly made, yet it is to be made upon the thing demised, and the assignee is to take the benefit of it, and therefore shall bind the assignee by express words."

Subsequent decisions leave it exceedingly doubtful whether the court so decided. In the English notes to *Spencer's* case, in 15 *English Ruling Cases,* 244, the author says that Anonymous case in Moore, 159, 300, has been identified as a report of the final determination of *Spencer's* case. The court is there reported to have held that: " Notwithstanding that covenants lack words [assigns], yet each, by acceptance of possession, has made himself subject to all covenants concerning the land, but not to collateral covenants; and covenants of reparations and building of walls or houses are covenants inherent to the land with which the assigns without special words shall be charged." Chief Baron Pollock, in speaking for the Court of Exchequer, in *Minshull v. Oaks,* 11 H. & N. 793, suggested that " the explanation may be that Lord Coke reported a variety of arguments and opinions expressed, while Moore gave the ultimate decision," and noted that no reason was given in *Spencer's* case for the alleged difference between where the assignee is named and is not named, and that the reason for binding the one is equally applicable to the other. Attention is directed to the circumstance that the resolutions were never acted on, and that, according to Moore, the decision was the other way, as was

that in *Smith v. Arnold*, 3 Salk, 4.    There the question was
whether the assignee of a lessee for life who had covenanted
for himself and as executor to erect an outhouse on the de-
mised premises might be charged in an action on the covenant
if the outhouse was not built; and the decision was as fol-
lows:    " It was insisted that he could not, because the as-
signor had covenanted only for himself, the executors, and
administrators, leaving out the word ' assigns,' which is very
true ; but adjudged that the assignee by the acceptance of the
possession of the lands had made himself subject to all the
covenants which run with the land, of which repairing is one,
building is another, and to such he is bound without being
named by that special word ' assigns,' but not to any col-
lateral covenants."    In the case of *Bally v. Wells*, 3 Wilson's
Reports, 24, determined in 1769, the word " assigns " ap-
pears in the covenant, but the court, after quoting, though
not fully, the resolutions in *Spencer's* case, said by illustra-
tion:    " As if lessee for life covenants for him, his executors
and administrators, to build a wall within his term and aft-
erwards he assigns over his estate, the grantee of the rever-
sion shall have covenant against the assignees, and notwith-
standing the covenant wants the word ' assigns,' yet every
assignee by accepting the possession hath made himself sub-
ject to all covenants concerning the land, and not to collateral
covenants and covenants of repair and building walls or
houses, are covenants inherent in the land with which the
assigns, without especial words, shall be charged."    The case
of *Doughty v. Bowman*, 17 L. J. (N. S.) 111, though some-
times cited, has no bearing on the question.    The author of
the English notes to *Spencer's* case in 1 *Smith's Leading
Cases* (8th Ed.) 155, while conceding the strong resemblance
to Anonymous case reported by Moore, points out differences
which leave the matter in some doubt.    Certain it is, how-
ever, that no definite pronouncement on the particular case
presented appears in Lord Coke's report of *Spencer's* case,
and, in view of the latter decisions, it ought not to be said

that the use of " assigns " as a technical word is or ever has
been essential to the running of a covenant with the land at
the common law.    There never was ground for a rational
distinction between the assignee named and not named as to
things not *in esse*.    As to the benefit or burden of such a
covenant, these would be in exactly the same · position, and,
if this is good ground for holding an assignee named, it is
equally good for holding one not named.    Moreover, as re-
marked in the annotation in *Smith's Leading Cases,* the
covenant may as well be said to be annexed, not to the thing
not *in esse,* but to the land itself upon which the thing is to
be made or done, and in respect of which, and not of the
thing not *in esse,* there is privity of estate, which is held by
many of the decisions to be the foundation of the running of
covenants.

    In determining whether a covenant will run with the
land, the material inquiries always are (1) whether the
parties meant to charge the land; and (2) whether the bur-
den is one that can be imposed consistently with policy ·and
principle.    That a covenant to maintain a division fence
touches and concerns the land itself, and for this reason ap-
propriately may be the subject of such a covenant, is fully
confirmed by the authorities.    *Kellog v. Robinson,* 6 Vt.
276 (27 Am. Dec. 550) ; *Hazlett v. Sinclair,* 76 Ind. 488
(40 Am. Rep. 254) ; *Brown v. Railway Co.,* 36 Or. 128
(58 Pac. 1104, 47 L. R. A. 409, 78 Am. St. Rep. 761) ;
*Easter v. Railway,* 14 Ohio St. 48 ; *Burbank v. Pillysburg,*
48 N. H. 475 (97 Am. Dec. 633) ; *Brownson v. Coffin,* 108
Mass. 175 (11 Am. Rep. 335).    See note to *Gibson v. Hol-
den* (Ill.) 56 Am. Rep. 161 *et seq.;* Washburn on Easements,
5.    Covenants intended to charge the land may be shown by
the employment of the word " assigns," and also may be
quite as strongly indicated by other language contained in
the deed, and generally the intention of the parties is to be
ascertained from the tenor of the instrument, the nature of
the thing to be done, its relation to the property, the period

of its continuance, and the like. Thus in *Masury v. South-worth,* 9 Ohio St. 340, the court held that a covenant to keep the buildings insured during the term of lease runs with the land, even though the word " assigns " was not used, saying: " Our conclusion is that the word ' assigns ' is not used in a technical sense and as the only word appropriate for the purpose, but that equivalent words, or any clear manifestation of intent, will suffice. We think the real question must be, the covenant being one which may be annexed to the estate and run with the land, whether such was the intention of the parties, as expressed in the deed. The important consideration is whether the covenant is annexed to the estate and runs with the land. If this be so, rights and liberties of those who take the estate and possess the land during the term flow from the privity of estate, and not from any assignment of right of contract. If the covenant cannot or does not run with the land, no words of assignment can create a privity of estate. If a privity of estate be created, no words of assignment are necessary." As bearing hereon, see, also, *Fitch v. Johnson,* 104 Ill. 111, and *Bald Eagle Valley Ry. Co. v. Nittany Valley Ry. Co.,* 171 Pa. 284 (33 Atl. 239, 29 L. R. A. 423, 50 Am. St. Rep. 807) ; *Brown v. Railway Co., supra; Duffy v. Railway Co.,* 2 Hilt. (N. Y.), 496 ; *Kellog v. Robinson, supra; Brockmeyer v. Sanitary Dist.,* 118 Ill. App. 49 ; *Railroad Co. v. Bosworth,* 46 Ohio St. 81 (18 N. E. 533) ; *Midland Ry. Co. v. Fisher,* 125 Ind. 19 (24 N. E. 756, 8 L. R. A. 604, 21 Am. St. Rep. 189) ; Platt on Covenants, 65 ; *Harris v. Goslin,* 3 Har. (Del.) 338 ; *Peden v. Railway Co.,* 73 Iowa, 328 ; *Kennedy Bros. v. Insurance Co.,* 119 Iowa, 29 ; *Teachout v. Lodge of I. O. O. F.,* 128 Iowa, 380. Reverting to the covenant in suit, it will be observed that Wilson as grantee of plaintiff agreed (1) to maintain a division fence of a particular character ; and (2) to do so perpetually. The thing to be done and continued inhered in the land and was such as might be annexed to the freehold as a covenant running with the land; and from the promise

that the maintenance should be perpetual, to continue longer than either party could have anticipated Wilson or his representative would survive, the intention of the parties that it run with the land is fairly to be inferred. Having so intended, the covenant should be construed accordingly. In other words, " the covenant did not relate solely to something not *in esse* at the time it was made, but related to the land so directly and in such a manner " that a third person taking title from the covenantor will be bound thereby.

II.  No question is made but that acceptance of the deed by the grantee obligated him to perform the conditions of the covenant.   There is a sharp conflict in the decisions,

2. Covenants: liability of grantor for performance.

but this court appears to be committed to the doctrine that in accepting a deed poll containing covenants or conditions to be performed by him in consideration of the grant he becomes bound for their performance.   *Peden v. Railway,* 73 Iowa, 328; *Kennedy Bros. v. Insurance Co.,* 119 Iowa, 29.   And such is the voice of the great weight of authority.   *Hickey v. Railway,* 51 Ohio St. 40 (36 N. E. 672, 23 L. R. A. 396, and note, 46 Am. St. Rep. 545); *Georgia Southern R. Co. v. Reeves,* 64 Ga. 492; *Burbank v. Pillsbury, supra; Schmucker v. Sibert,* 18 Kan. 104 (26 Am. Rep. 765); *Maynard v. Moore,* 76 N. C. 158; *Midland R. Co. v. Fisher,* 125 Ind. 19 (24 N. E. 758, 8 L. R. A. 604, 21 Am. St. Rep. 189); decisions collected in 11 Cyc. 1045.   The doctrine is an ancient one, being laid down in Shephard's Touchstone, 117, as follows: " If feoffment or lease be made to two, . . . and there are divers covenants in the deed to be performed on the part of the feoffees or lessees, and one of them doth not seal . . . and he that doth not seal notwithstanding accept of the estate, and occupy the land conveyed or demised, in these cases, as touching all inherent covenants, . . . they are bound by these covenants as much as if they do seal the deed."  An English author, after contending for the rule hereinafter mentioned, observes that,

as to above stated that, "Perhaps the doctrine has been too long sanctioned to be now reversed. At all events, it is an introduction of an equitable principle into a court of law: the acceptance of a deed being considered equivalent to an actual execution by the lessee." Platt on Covenants, 18. Cases to the contrary proceed upon the theory that an action of covenant is of technical nature, and cannot be maintained, except against the person who by himself or some other person in his behalf has executed a deed under seal or under peculiar circumstances has agreed to do a certain thing. *Kennedy v. Owen,* 136 Mass. 199; *Maule v. Weaver,* 7 Pa. 329; *Johnson v. Muzzy,* 45 Vt. 419 (12 Am. Rep. 214). Without entering upon a discussion of the merits of the controversy already discussed with much learning in the books, we are content to adhere to the equitable rule that acceptance of a deed poll binds the grantee to the performance of covenants contained therein, supported as it is by the better reasoned cases and in effect approved by previous decisions of this court.

III. Having found that the covenantor's grantee is bound by the covenant, the next inquiry is whether the covenantor also is liable thereon subsequent to parting with the title. This necessarily depends on the intention of the parties to the first deed. While the covenant is personal in form, this is not controlling, for the deed must have been executed with the understanding that (1) Wilson, the grantee, would have no right to enter on the land after passing title to another in order to repair or replace the fence; (2) that he would enjoy no benefit therefrom; and (3), owing to the nature of the covenant, neither he nor his representatives could perform by maintaining the fence perpetually. Of necessity the grantor must have relied on the land with which the covenant runs to secure its performance, and, fairly construed, Wilson's obligation was to make the fence and maintain it only during the time he owned the land. It could not have been his intention to assume an obligation *in pertetuum,* and, in event of disposing

3. SAME.

of the fee, to remain bound for life. On the other hand, the grantor naturally had in mind recourse on those who should own the land when the fence should need repair, rather than this grantee, who might be gone before this would be required. This conclusion seems reasonable, and has the support of *Hickey v. Railway,* 51 Ohio St. 40 (36 N. E. 672, 23 L. R. A. 396, 46 Am. St. Rep. 545). It follows that the district court rightly dismissed the petition as to Wilson, but should have entered judgment against Krausa.

Judgment for Wilson *affirmed,* for Krausa *reversed.*