[Aug. 16, 1917.]

## BOLLES v. PECOS IRR. CO.

### SYLABUS OF THE COURT.

1.   Where findings of trial court are made from transcript of evidence contained in report of referee, the same will be reviewed on appeal to determine whether they are supported by a preponderance of the evidence.        P. 38

2.   The right to perpetually receive water from a certain canal constitutes an easement in the canal.        P. 41

3.   A covenant by an irrigation company to permanently maintain a canal and the flow of water therein is a covenant running with the land, and not a personal covenant; and, upon a conveyance of the canal to another, the covenantor is released from further liability upon the covenant.        P. 41

Appeal from District Court, Eddy County; McClure, Judge.

Action by Richard J. Bolles against the Pecos Irrigation Company. Decree for plaintiff, and defendant appeals. Reversed and remanded, with instructions to enter judgment for defendant.

Bujac & Brice, of Carlsbad, for appellant.

Suit to recover price paid by appellee for water rights is not proper remedy.

Wiggins Ferry Co. vs. Ry. Co. 142 U. S. 396; Brockart vs. Ry. Co. 93 Ia. 136, 6 N. W. 406; Salt River, etc., Co. vs. Nellsen, 85 Pac. 117; Lublecke vs. Cabinet Co., 118 N. W. 456; 5th Thompson on Corporations, Sec. 6092-3; Hoard vs. R. R. Co. 123 U. S., 222.

Appellant's predecessor conveyed only an easement in its ditch.

Hildrith vs. Water Company, 70 Pac. 672; Water Company vs. Bachman, 93 Pac. 859; Gould vs. Canal Com-

pany, 76 Pac. 598; Canal Company vs. Nelsson, 85 Pac. 117; People vs. Reservoir Co., 54 Pac. 630; Farmers, etc., Co. vs. Real Estate Co., 92 Pac. 290; Weil on Water Rights, Sec. 422.

Appellant's purchase of water works required it to fulfill obligations of predecessor and appellant's sale to United States transferred obligations to latter.

5th Thompson on Corporation, 6091-2; Hoard vs. Chesapeake & Ohio Ry. Co. 123 U. S. 222; Knowles vs. Irrigation District, 101 Pac. 81; Fellows vs. City of Los Angeles, 90 Pac. 137; Beck vs. Land & Water Co., 59 Pac. 387; Stanilus Water Co. vs. Bachman, 93 Pac. 858; Sims on Real Covenantst, P. 95 and authorities cited.

Injury to land was measure of damages.

Bell vs. Water Company, 96 S. W. 572; Neff vs. R. R. Co. 51 Am. Rep. 1038; Authenrith vs. Ry. Co. 36 Mo. App. 254; R. R. Co. vs. Bay, 102 S. W. 302; Stanlius Water Co. vs. Bachman, 93 Pac. 858; Gallagher vs. Water Co., 164 N. Y. 602; Gray vs. Ft. Plain, 94 N. Y. S. 698; Sweeney vs. R. R. Co. 47 Mo. 791; 13 Cyc., 150.

James M. Dye, and R. C. Reid, both of Roswell, for appellee.

Appellant's purchase of water works cast upon it obligations incident thereto.

Wiel on Water Rights (2d Ed.) Sec. 220; Clyne v. Benicia Water Co. (Cal.) 34 Pac. 714; Stanislaus Water Co. v. Bachman (Cal.) 93 Pac. 858; Sammons v. Kearney Power Co. (Neb.) 110 N. W. 308; Robbins v. Bangor R. E. Co. (Me.) 1 L. R. A. (N. S.) 963; Bell v. Louisville Water Co. (Ky.) 96 S. W. 572, 573; Knowles v. New Sweden Irr. Dist. (Ida.) 101 Pac. 81; Hewitt v. San Jocinto Irr. Dist. (Cal.) 56 Pac. 893; South Pasadena v. Land & Water Co. (Cal.) 93 Pac. 490; Beck

v. Pasadena L. & W. Co. 59 Pac. 387; Wiggins Ferry
Co. v. O. & M. Ry. 142 U. S. 396.

A water right is incorporeal.
Weil on Water Rights, Sec. 68.

Appellant was liable for failure to permanently furnish
water under its contracts.

Mill Dam v. Howay, 38 Mass. 417; Anderson v. May
& Co. 19 L. R. A. 555; Stewart v. Stone, 14 L. R. A.
215; Williams v. Vanderbilt, 84 Am. Dec. 333; Miss.
Logging Co. vs. Robson, 69 Fed. 773; Klauder v. San
Diego, Cal.) 30 Pac. 555; 9 Cyc. 625-D.; Holt Mfg. Co.
v. Thornton (Cal.) 68 Pac. 708; Sample v. Fresno Flume
& Irr. Co. 61 Pac. 1085.

Appellant voluntarily disabled itself to perform its con-
tracts when it sold its irrigation works to the United
States.

Heard v. Bowers, 23 Pick. (Mass.) 455; Bolles v.
Sachs, (Minn.) 33 N. W. 862; 9 Cyc. 639 (4) and cases
in note; Elliott on Contracts, Sec. 1915; Bell v. Shields
(Idaho) 111 Pac. 1076; Vaughn v. Digman, (Ky.) 43
S. W. 251.

Measure of damages was the price paid for the water
rights.

Sample v. Fresno Flume & Irrigation Co., (Cal.) 61
Pac. 1085; Richter v. Union Land & S. Co. (Cal.) 62
Pac. 39; Smith v. Blandin, (Cal.) 65 Pac. 894; Carter
v. Fox, (Cal.) 109 Pac. 910; Stanislaus Water Co. v.
Bachman, 93 Pac. 858.

Findings, being supported by substantial evidence, will
not be disturbed on appeal.

Territory v. Sais, 103 Pac. 980; Pecos Valley Imp. Co.

v. Cecil, 99 Pac. 691; Torlina v. Trorlicht, 27 Pac. 794;
Newcomb v. White, 23 Pac. 671; Romero v. Desmarais,
20 Pac. 797; Clark v. Carlisle, 21 Pac. 356.

Appelant's reply brief.
Appellant liable for breaches occurring during time it ·
owned property, but not afterwards.
11 Cyc. 1102-1103.

## OPINION OF THE COURT.

PARKER, J.  This is an action brought in the district court of Eddy county by Richard J. Bolles, appellee,
against the appellant, Pecos Irrigation Company, a corporation, to recover $13,200 damages for alleged breach
of covenant.  From a decree in favor of appellee, the
appellant has appealed.

The complaint contained six separate counts, and proceeded upon the theory that the appellant has assumed
the performance of certain contracts made and entered
into btween the predecessors in title of both of the parties to this action.  Those contracts provided, in substance, that appellant's predecessor in title, in consideration of the payment to it of $10, plus an annual rental
charge, per acre, would furnish and deliver a stated quantity of water from its Southern Canal to the land of
appellee's predecessor in title, and would permanently
maintain the said canal and the flow of water therein.
The complaint alleged that the appellant acquired all the
right, title, and interest of the former owner of said canal
and the irrigation system of which it was a part; assumed to carry out the terms of said contracts and had
performed the obligation thereof until the 2d day of October, 1904, when it failed, neglected, and refused to furnish said water to appellee and his land, and then and
there failed and continually since has failed to permanently maintain said canal and the flow of water therein.
It also alleged that the failure of the appellant to furnish and deliver water to appellee for the irrigation season of 1905 and ·1906 made it necessary for the latter to
purchase water rights elsewhere, and then prayed dam-

ages equivalent to the sum paid for the so-called water rights by appellee's predecessor in title, which in the aggregate amounted to $13,200.

The appellant filed an answer of some length. It denied the assumption of such contracts by it, but admitted that it furnished water in pursuance thereof; denied any breach of contract on its part; alleged that a flood of unprecedented volume occurred in the Pecos river on October 2, 1904, which destroyed its Avalon dam and otherwise injured the irrigation system to such an extent that it was temporarily unable to furnish water to appellee and other water users under said system. It alleged that the said flood and damage consequent thereon were unforeseen, and an act of God, which excused it from temporary performance under a provision of the contracts referred to in the answer. It also alleged, with some elaboration, that immediately after said flood and the destruction of its dam and other works, the appellant began to make preparations for the restoration of the irrigation plant and would have repaired the same and then have been in a position to fulfill the terms of said contracts but for the action of appellee in participating in a scheme looking to the sale and transfer of said property to the United States under the Reclamation Act of Congress; that the appellee became a member of the Pecos Water Users' Association, a corporation formed in pursuance of the requirements of the said Reclamation Act, and was instrumental in consummating, with the assistance of other water users and the appellant, a sale to the United States of said irrigation system. Under these and additional facts too numerous to mention in detail here, the appellant claimed that appellee was estopped from asserting that appellant had abandoned its irrigation system and the said Southern Canal and had breached its contracts in that respect.

The cause was referred to a referee with instructions to make "findings of fact and law" and report same to the court. The referee, after trial, made his findings of fact and conclusions of law and reported the same to the court. Among other things, he found that the proximate

cause of the damage done to the Avalon dam in 1904 was the flood, without negligence on the part of appellant, and, consequently, under a provision of said contracts, appellant was temporarily excused from performance of the obligation to furnish and deliver water to appellee; that after the destruction of said dam the appellant diligently proceeded to construct a temporary dam so that water might be delivered for the irrigation season of 1905; that this temporary dam was destroyed by a flood on June 2, 1905; that appellant would have furnished and delivered water thereafter from its said irrigation system except for the acts of the appellee and others, which resulted in the sale of the property to the United States. Upon these findings, and others not necessary to mention, the referee concluded, as a matter of law, that appellant had assumed the performance of the covenants contained in the contracts entered into by its and the appellee's predecessors in title; that the flood of October 2, 1904, was an act of God and relieved appellant of temporary performance of the covenants; that the nonperformance of said covenants on the part of appellant was thereafter caused by the acts of the appellee in (1) transferring his property in trust to another, the Pecos Water Users' Association, thereby putting it out of the power of appellant to furnish and deliver said water thereafter to appellee, and (2) in doing the things pleaded in the plea of estoppel.

The trial court, upon exceptions taken by appellee to the findings and conclusions of the referee, set the same aside, as wel as the report of the referee, and thereupon entered findings and conclusions favorable to appellee. The trial court concluded that the amended answer of appellant was largely in the nature of confession and avoidance, and stated that its merits depended principally on three things, viz: (1) Was the appellant negligent in maintaining the dam; (2) was the proximate cause of the destruction of the Avalon dam the act of God or an unforeseen accident; and (3) was the appellee estopped from asserting the claims set forth in the amended complaint. The court stated that it did not agree with the

findings and conclusions of the referee after an examination of the pleadings, evidence, and briefs and arguments of counsel, and found that while the flood of 1904 was of unprecedented volume, the dam would have withstood it had it been properly and suitably maintained; that the doctrine of estoppel was not applicable; and that the material allegations of the complaint were sustained by the evidence.

Eighteen errors are assigned by appellant. The argument made under each assignment involves several additional questions of law, but we shall not determine all the questions presented, for the reason that an analysis of the case discloses that a consideration of many such questions is not necessary.

[1] The first question we shall determine is, how far are we bound by the findings of the trial court made under the circumstances in which the findings in this case were made. The court made its findings upon matters of record only. It did not have the opportunity of observing the conduct and demeanor of the witnesses nor did it have the benefit of the atmosphere of the trial. Under such circumstances its findings will be reviewed here to determine whether they are supported by a preponderance of the evidence, rather than by substantial evidence. Gallup Electric Light Co. v. Pacific Im. Co., 16 N. M. 86, 94, 113 Pac. 848; Warren v. Kornegay, 20 N. M. 225, 147 Pac. 1197.

The allegations in the complaint lead us to the conclusion that the appellee sought to recover damages not only on account of the alleged abandonment of the canal and the flow of water therein, but also on account of appellant's failure to deliver water for the irrigation season of 1905 and 1906, as a consequence of which the appellee purchased, by compulsion, water rights elsewhere. But the trial court assessed no damages against appellant for its failure to furnish and deliver water for the two years mentioned, and counsel for appellee deny that they sought to recover damages therefor. Whether or not, therefore, the destruction of the Avalon dam in 1904 was due to the negligence of the appellant, or to an

unforeseen accident, or the act of God, is immaterial. But in this connection it should be remarked that the finding of the referee on this question was correct, and that of the court wholly erroneous. The only evidence upon which the trial court made its finding that the proximate cause of the destruction of the dam in 1904 was the negligence of the appellant, as we view the record, is the opinion of an engineer who assumed that the dam was destroyed by water rushing through a hole made in the dam by some burrowing· animal. There was no evidence whatever that this was a fact, nor that even if it were a fact that the appellant was negligent in protecting the dam against such casualties. Opposed to that evidence is the testimony of the engineer in charge of the works of the appellant company that he employed divers men to police and inspect the dam, and that in his experience he had never observed the presence of burrowing animals at the dam. The proximate cause of the destruction of the dam was stated by this engineer to have been the swirling of water under tremendous pressure and in great volume.

Because there is absolutely no evidence in the record of damage to appellee for appellant's failure to deliver water to his land for the irrigation seasons of 1905 and 1906 and because appellee specifically disclaims damages on that score, the judgment of the trial court must be sustained, if at all, upon the allegation and proof of breach of covenant to permanently maintain the Southern Canal and the flow of water therein. The trial court found this issue in favor of appellee, but its finding on this question was general and did not disclose the theory upon which it was made. The evidence is wholly insufficient to support the finding that appellant, in fact, breached this covenant. It appears that from the time of the destruction of its dam in 1904 until December, 1906, the time when it sold its irrigation system to the United States, it continued in possession of the irrigation system, without intent to abandon it. The simple fact that it intermittently failed to maintain the canal and the flow of water therein from June, 1905, to December,

1906, falls far short of exhibiting an actual abandonment of its duty or an intent to permanently abandon the maintenance of the canal. Long prior to this time it had been engaged in an effort to relieve itself of the burdens incident to the operation of this irrigation system, and with the active assistance of the appellee finally, in 1906, influenced the government of the United States to purchase the .system under the Reclamation Act. The record fails to disclose that in fact the appellant failed to permanently maintain the canal' and the flow of water therein, unless the sale of the irrigation system by it in December, 1906, constitutes a breach of that covenant or evidences an intention to no longer be bound thereby. But we are satisfied that the appellant cannot be held to have violated the covenant by making a sale of its property to the United States. The reason for this is that it was reasonably within the contemplation of the original parties to the contract, which created this burden, that the corporation, the predecessor in title of appellant, was of limited duration, and that the other party to the contract, the predecessors in title of the appellee, would not for all time survive. The contracts provided, among other things:

That for a named consideration the irrigation company "does bargain, sell, * * * and convey a designated number of 'water rights in said canal' to 'be applied and attached to' and be used in conjunction with (designated lands), the 'intention of the above conveyance being that each of said water rights shall be and remain a right to receive and use, during each year, from said canal, upon the land named in connection therewith, the amount of water herein specified, and that each of said rights shall be and remain      *      *      a right incident and appurtenant to said land."

The contracts contained this further clause:

That the irrigation company shall "permanently maintain the said canal and the flow of water therethrough," and that the covenantee and the "heirs, assigns, and successors thereof in ownership of said lands" shall pay the irrigation company certain compensation for furnishing water.

The contracts further provided that:

"All covenants and agreements herein contained and rights

hereby granted to either of said parties shall extend to and be binding upon the heirs, assigns, legal representatives and successors of said party."

[2] Under these contracts it will be seen that appellant's predecessor in title was simply a carrier of a stated quantity of water for appellee's predecessor in title. The right acquired by the appellee constituted an easement in the ditch of the appellant. Stanislaus Water Co. v. Bachman, 152 Cal. 716, 93 Pac. 858, 15 L. R. A. (N. S.) 359; Wyatt v. Larimer & W. L. Co., 18 Colo. 298, 33 Pac. 144, 36 Am. St. Rep. 280; Beck v. Pasadena L., etc., Co. (Cal.) 59 Pac. 387; Chicosa Irr. D. Co. v. El Moro D. Co., 10 Colo. App. 276, 50 Pac. 731.

[3] The Pecos Irrigation Company was not bound to retain ownership forever of the land upon which the canal was situate. We know of no doctrine of law which would impress this duty upon it. The proposition seems clear that the parties to these contracts did not contemplate that the covenantor should perpetually be required to perform the covenants therein expressed, regardless of the ownership of the canal. That they contemplated a possible change in ownership and hence a consequent shifting of the burden of performing the covenants therein expressed is clear beyond all question. The corporation, the parties must have known, would eventually expire by statutory limitation. But the contracts negative all idea of casting upon the covenantor, personally, a perpetual duty by providing that the covenants therein contained were binding upon the "successors" of the parties. There was no occasion for the clause providing that the "successors," etc., should be bound by the covenants, unless it was intended thereby to insure to the covenantee, and those acquiring title from him, that the covenants cast upon the covenantor would be performed by whoever became possessed of the servient estate. The covenants were not personal to the irrigation company. They were personal to the owner of the canal, in the sense that they required of him the performance of something which could be performed only by virtue of the ownership of the canal. The charge was upon the canal; the execution of

the covenant being chargeable against the owner thereof.

A case involving the principle decisive of this proposition is that of Sexauer v. Wilson, 136 Iowa, 357, 113 N. W. 941, 14 L. R. A. (N. S.) 185, 15 Ann. Cas. 54. There the covenantor agreed to maintain perpetually a tight fence between land granted to him and land of the grantor. He erected partition fences and maintained them for five years, when he sold the property constituting the servient estate to the defendant Krausa. The latter failed to maintain the fence, and in an action by the grantor against Wilson and Krausa it was held that Wilson was relieved of further responsibility in the premises after his sale to Krausa, the covenant running with the land. The court said:

"Having found that the covenantor's grantee is bound by the covenant, the next inquiry is whether the covenantor also is liable thereon subsequent to parting with title. This necessarily depends on the intention of the parties to the first deed. While the covenant is personal in form, this is not controlling, for the deed must have been executed with the understanding that: (1) Wilson, the grantee, would have no right to enter on the land after passing title to another in order to repair or replace the fence; (2) that he would enjoy no benefit therefrom; and (3) owing to the nature of the covenant neither he nor his representatives could perform by maintaining the fence perpetually. Of necessity the grantor must have relied on the land with which the covenant runs to secure its performance, and, fairly construed, Wilson's obligation was to make the fence and maintain it only during the time he owned the land."

The court then stated why the parties must have so intended, saying:

"It could not have been his intention to assume an obligation in perpetuam, and, in event of disposing of the fee, to remain bound for life. On the other hand, the grantor naturally had in mind recourse on those who should own the land when the fence should need repair, rather than this grantee who might be gone before this would be required."

See also, Hickey v. Lake Shore, etc., R. Co., 51 Ohio St. 40, 36 N. E. 672, 23 L. R. A. 396, 46 Am. St. Rep. 545, cited by the court in the Sexauer-Wilson Case, *supra*, and the notes to the latter case as the same appear in L. R. A. and Am. St. Rep.

No case, applying this principle as between water right owner and water companies, is to be found, but we can see no reason to deny its application in such cases.

The judgment of the trial court is therefore reversed,' and the cause is remanded, with instructions to enter judgment for appellant, and it is so ordered.

