**ASSOCIATED GROCERS OF IOWA COOPERATIVE, INC., Appellee,**

v.

**George G. WEST, Appellant,**

and

**Lloyd G. Huffer, Defendant.**

**George G. WEST, Third–Party Appellant,**

v.

**DES MOINES SAVINGS & LOAN ASSO-CIATION and Metropolitan Financial Corp., Third–Party Appellees.**

No. 63142.

Supreme Court of Iowa.

Sept. 17, 1980.

Rehearing Denied Oct. 9, 1980.

Doyle D. Sanders of Peddicord, Simpson & Sutphin, P. C., Des Moines, for appellant.

Joseph Joyce of Adler, Brennan, Joyce & Steger, Des Moines, for Associated Grocers of Iowa Cooperative, Inc.

Robert Rydell of Tesdell, Rydell, Hall & Shinkle, Des Moines, for Des Moines Savings & Loan Association and Metropolitan Financial Corp.

LeGRAND, Justice.

This breach–of–contract action is the outgrowth of an unsuccessful venture by which George G. West and Lloyd G. Huffer hoped to profit from the development of real estate for industrial purposes. When their expectations were dashed, they were called upon to defend several suits arising out of that matter. This is one of them. Plaintiff obtained judgment against West and Huffer for $96,177.41. In addition, West's counterclaim against plaintiff was dismissed, and his cross–petition for indemnity against Des Moines Savings & Loan Association and Metropolitan Financial Corporation was also dismissed. This appeal followed, and we affirm.

First, it will be helpful to sort out the parties to this litigation. Lloyd G. Huffer did not resist plaintiff's claim. Judgment by default was entered against him. He is not a party to this appeal. Metropolitan Financial Corporation is a wholly owned subsidiary of Des Moines Savings & Loan Association. Their interests herein are identical. Our references throughout are to West as the sole remaining defendant and to Des Moines Savings & Loan Association for both itself and Metropolitan Financial Corporation on the third–party claim.

In September of 1971, West purchased the remaining lots in an area known as Ankeny Industrial Development Park. West intended to complete development of this area, a project which had already been started.

Part of West's plan was to secure a major purchaser for part of the area, expecting this would in turn attract other buyers and facilitate development of the property. The evidence is in dispute as to whether the commitment was conditional upon West securing a major purchaser. We do not believe this has any significance in the conclusion we reach.

In June of 1972, West entered into an option contract with Associated Grocers of Iowa Cooperative, Inc. (AGI) which is the subject of this litigation. The option ran for ninety days and gave AGI the right to purchase Lots 10, 11, and 12 in Ankeny Industrial Development Park for a price of $5,500 per acre. The terms were later amended to provide that AGI could postpone exercising its option as to Lot 10 for five years.

The real point at issue concerns the provisions in the option which obligated West to do certain construction work. As finally agreed upon, they were as follows:

3. Immediately following the closing of this sale the seller hereby agrees to install roads on the north border of Lots 10, 11, and 12 and extend said road east to Delaware Avenue and seller further agrees to install a road on the east border of Lot 10 to provide access south from the property which is the subject of this proposal.

4. Seller also agrees to construct at its expense two railroad spurs from the main line of the Chicago Northwestern Railway Company to the property line of Lot 12, the location of said spurs be determined by mutual agreement between buyer and seller.

Armed with the AGI option, West secured financing from Des Moines Savings in the amount of $339,000. All of the loan proceeds were paid to him except $60,000, which was reserved for street construction. This figure was apparently arrived at by withholding 75 per cent of the estimated cost of $78,000. The city of Ankeny was to pay the remaining 25 per cent.

Approximately sixty days after West had secured financing, AGI exercised its option to purchase Lots 11 and 12 and postponed exercising its option on Lot 10. West did not install the roads nor did he construct the railroad spurs as the option specified.

AGI did not begin construction for four years after exercising its option, although it paid West the full purchase price for Lots 11 and 12.

The transaction between AGI and West was completed on October 16, 1972, by delivery of a warranty deed conveying Lots 11 and 12 and reserving the option to purchase Lot 10. AGI started construction of its warehouse on Lots 11 and 12 in 1976 and completed it in 1977. The option to purchase Lot 10 was not exercised until 1977.

Eventually the city of Ankeny paved the streets described in the option and assessed AGI for its portion of the cost. AGI installed the railroad spurs at its own cost. West refused to assume any obligation for either of these expenditures for a variety of reasons which we discuss later. West was unable to sell the remaining lots in the addition. He blames this on AGI's failure to build its warehouse as an attraction to other potential buyers. In 1974 Des Moines Savings started foreclosure on the West mortgage, which was in default. A decree of foreclosure was entered, subject to AGI's option to purchase Lot 10.

Lot 10 was assessed for paving in the amount of $15,075.11. Lot 11 was assessed for $5,906.51. This was for the paving of Hulsizer Street. Lot 10 was also assessed in the amount of $8,657.26 for the paving of Iowa Street. The actual assessments were considerably less than the estimate upon which the $60,000 was withheld. The property was sold at sheriff's sale to Des Moines Savings for the amount remaining due on the indebtedness. After the expiration of the period of redemption, AGI made demand on West for reimbursement, claiming the option obligated West to pay both the paving assessment and the cost of the railroad spur lines.

The case was tried to the court and judgment went against West on all issues. He was ordered to reimburse AGI for the cost of the street paving and the railroad spurs in the total amount of $96,177.41. His counterclaim against AGI was dismissed. His third–party petition against Des Moines Savings for indemnity was dismissed. He appealed from all these adverse results.

■ West lists seventeen separate statements of error. Some of them are repetitive, and some state alleged errors which, even if established, would not entitled West to any relief. Six of the claimed errors, for instance, assert there was sufficient evidence to justify a finding in his favor on certain issues. If we concede this is true, it would still afford no basis for reversal. This is a law action tried to the court, whose findings, if supported by substantial evidence, are binding upon us. In other words, if there is substantial evidence to support the finding made, it is immaterial that the evidence would also have supported a contrary result. *Iowa Power & Light Co. v. Board of Waterworks Trustees*, 281 N.W.2d 827, 830 (Iowa Ct.App.1979); *Keith v. Community School District*, 262 N.W.2d 249, 255 (Iowa 1978); Rule 14(f)(1), R.App.P.

The appeal presents these issues: 1) Was the obligation to pave the streets and install railroad spurs personal or was it a covenant running with the land? 2) Was performance excused because of impossibility or impracticability? 3) Did AGI lose its right to assert this claim by its failure to file a counterclaim in the earlier foreclosure action brought by Des Moines Savings against West? 4) Does the result amount to unjust enrichment for Des Moines Savings? 5) Should AGI be barred from recovering because of collusive bargaining with Des Moines Savings to fix liability on West? 6) Did the trial court commit reversible error in ruling on certain evidentiary matters?

## I. WAS THE OBLIGATION ASSUMED BY WEST PERSONAL OR ONE RUNNING WITH THE LAND?

■ This is perhaps the most important single issue. It runs all through the case. Our resolution of this question against West goes far toward deciding the ultimate result which we reach.

Both parties cite extensively from *Sexauer v. Wilson*, 136 Iowa 357, 362–63, 113 N.W. 941, 943 (1907) on this issue. *Sexauer* sets out the conditions to be met in deter-

mining when a covenant runs with the land. We quote from that case:

> In determining whether a covenant will run with the land, the material inquiries always are (1) whether the parties meant to charge the land; and (2) whether the burden is one that can be imposed consistently with policy and principle. ...
>
> Covenants intended to charge the land may be shown by the employment of the word "assigns," and also may be quite as strongly indicated by other language contained in the deed, and generally the intention of the parties is to be ascertained from the tenor of the instrument, the nature of the thing to be done, its relation to the property, the period of its continuance, and the like. ...
>
> We think the real question must be, the covenant being one which may be annexed to the estate and run with the land, whether such was the intention of the parties, as expressed in the deed.

In *Sexauer* the grantee agreed to perpetually maintain a tight fence "sufficient to stop hogs and all other livestock." Later the grantee disposed of his interest in the land and refused to perform the condition of maintaining the fence. We held his obligation to do so ceased when he divested himself of all interest in the real estate because that was the intention of the parties.

We quote further from *Sexauer*:

> [I]t will be observed that Wilson as grantee of plaintiff agreed (1) to maintain a division fence of a particular character; and (2) to do so perpetually. The thing to be done and continued inhered in the land was such as might be annexed to the freehold as a covenant running with the land; and from the promise that the maintenance should be perpetual, to continue longer than either party could have anticipated Wilson or his representative would survive, the intention of the parties that it run with the land is fairly to be inferred. Having so intended, the covenant should be construed accordingly.

136 Iowa at 363–64, 113 N.W. at 944.

The rule is stated in Restatement of Property, § 531 (1944):

> The successors in title to land respecting the use of which the owner has made a promise are not bound as promisors upon the promise unless it was intended by the parties to the promise that they should be so bound.

*See also* Restatement of Property, § 538.

The present case is distinguishable from *Sexauer.* The installation of the spurs and the paving of the streets required a one–time performance only. The paving was to be done "immediately," strongly suggesting the duty was personal to the promisor. Both the paving and the railroad spurs were vital to the consideration for the sale of the lots. As West testified at trial, the sale to AGI was to be a great attraction in bringing in other buyers and was thought to be important to the success of the venture. As part of the inducement to secure AGI's agreement to purchase, West agreed to perform these conditions. We are convinced his promise was personal and bound him individually to perform the covenants which he undertook. The agreement is subject to no other reasonable interpretation.

■ The fact that the agreement did not work out advantageously does not excuse West from performing. His various defenses are without merit. Some are even frivolous in nature. He argues, for instance, lack of consideration; but there was valuable consideration passing between the parties when the promise was made. West got his major purchaser. AGI got construction—or at least the promise of construction—of streets and railroad spurs.

■ West also argues he was released because, after transfer of title, he had no right to go on the land to do the necessary construction work. He must mean after the foreclosure action, but the agreement was breached even before that happened. West's first issue is without merit.

## II. WAS PERFORMANCE EXCUSED BECAUSE OF IMPOSSIBILITY OR IMPRACTICABILITY?

West says it was impossible, or at least impracticable, for him to perform the condi-

tions of the option. We recognized the impossibility doctrine in *Nora Springs Coop. Co. v. Brandau*, 247 N.W.2d 744, 747–48 (Iowa 1976). West now wants it extended to include impracticability as well. Without deciding this issue, we conclude the doctrine is not applicable here. *See* 17 Am. Jur.2d *Contracts*, § 402 (1964).

▪▪ Nothing renders this contract impractical or impossible except West's bad judgment. West contends AGI's long delay in building, the dramatic increase in construction costs, and the mortgage foreclosure action all combined to render performance "impossible and impracticable." He cites no case authority for this proposition. We find no support for his argument. Impossibility of performance refers to extraordinary circumstances which could not have been anticipated and which arise without fault on the part of the one seeking to avoid performance. Those conditions are not present in this case. The matters about which West complains were reasonably to be anticipated and could easily have been guarded against by the parties. *Cf. Powers v. Siats*, 70 N.W.2d 344, 348–49 (Minn.1955) (fact that performance becomes economically burdensome does not excuse performance unless caused by some unforeseen contingency which alters the essential nature of the performance). West relies on sections 402, 404, and 405 in 17 Am.Jur.2d *Contracts* (1964). These sections, together with section 406, help AGI more than West. We reject his argument raised in this division.

## III. FAILURE TO FILE COUNTER-CLAIM IN FORECLOSURE ACTION.

▪▪ Des Moines Savings foreclosed its mortgage and secured personal judgment against West. West now says AGI is barred under rule 29, R.Civ.P., because the claim it now makes was not brought as a counterclaim in the foreclosure action. We recently discussed rule 29 in *Walters v. Iowa–Des Moines National Bank*, 295 N.W.2d 430 (Iowa 1980). The rule is designed to avoid a multiplicity of suits. If within the definition of compulsory counterclaim, a claim is lost unless asserted in the original suit brought by the opposing party.

There is no "logical relationship" between the foreclosure action and the present claim. They do not arise out of the same transaction. We hold that the claim which is the subject of the present litigation was not a compulsory counterclaim under rule 29 in the foreclosure action.

## IV. UNJUST ENRICHMENT.

▪ As we understand this argument, it goes to the third–party claim. West asserts if he is required to pay for the pavement and the railroad spurs, there will be unjust enrichment resulting to Des Moines Savings because it succeeded to West's interest by the foreclosure action. This really leads into the next asserted error, which is that there was a collusive bargain between AGI and Des Moines Savings. West argues these two parties agreed that AGI would insist upon performance by West and that the benefit would then inure to Des Moines Savings. In return Des Moines Savings would convey approximately .85 of an acre to AGI without consideration and would also postpone completing the transaction for Lot 10 until this case is concluded. The record is entirely without support for this theory. There is no evidence to substantiate that the two parties agreed to any such arrangement in order to burden West with this obligation. West concedes there is no direct evidence, but says the circumstantial evidence strongly supports this conclusion. The trial court did not so find, and there is no ground upon which we could disturb that holding.

## V. EVIDENTIARY RULINGS.

▪ West raises various objections to the refusal of the trial court to admit evidence as being violative of parol evidence rule. The excluded evidence related to whether AGI had bought Lots 11 and 12 for the purpose of building a warehouse; the delay AGI encountered in securing financing; and West's claim that the option contract did not constitute the entire agree-

ment between the parties. Any error in the refusal to admit evidence concerning the first two of these is rendered harmless because in each instance the evidence later came in. *Kengorco, Inc. v. Jorgenson*, 176 N.W.2d 186, 189–90 (Iowa 1970). There is uncontroverted evidence that AGI bought Lots 11 and 12 to build a warehouse. There is equally uncontroverted evidence that AGI's efforts to secure financing extended well into 1974.

West complains, too, that he was not permitted to testify that the option did not constitute the entire agreement between the parties. The record, however, does not support this argument. The trial court sustained an objection to such testimony because of inadequate foundation. Later West testified concerning both oral and written modifications to the original option.

█ It is true West was not allowed to testify that AGI was to build its warehouse within one year. We believe this ruling was correct. West relies on *Hamilton v. Wosepka*, 154 N.W.2d 164, 167–68 (Iowa 1967); but this case is not governed by that decision.

In *Wosepka*, we held extrinsic evidence is admissible to explain the real meaning of the parties by the language used. The purpose of the proffered testimony here is to add a new condition, not to explain "what was meant by what they said" but rather to tell "what they meant to say." In *Tamm, Inc. v. Pildis*, 249 N.W.2d 823, 831 (Iowa 1976), we pointed out this is precisely what *Hamilton* does *not* mean.

In *Pappas v. Hauser*, 197 N.W.2d 607, 611 (Iowa 1972), we said:

> [T]he parol evidence rule forbids the use of extrinsic evidence to vary, add to, or subtract from a [written] agreement.

These two cases, rather than *Wosepka*, are controlling here. To engraft, now, a time limit of one year on the construction of AGI's warehouse would be to change substantially the terms of the agreement. We believe the trial court was right in so ruling.

VI. We have considered all matters raised by this appeal, whether specifically discussed or not. We find no reversible error. The trial court was correct in entering judgment against West, in disallowing his counterclaim, and in dismissing the third–party claim against Des Moines Savings.

AFFIRMED.

All Justices concur except UHLEN-HOPP, McCORMICK and SCHULTZ, JJ., who take no part.