475 So.2d 807 (1985)
Eugene Clint VINSON, Individually, and as Executor of Estate of Eugene Vinson, Deceased,
v.
MERIDIAN MASONIC TEMPLE BUILDING ASSOCIATION: Mr. & Mrs. L.M. Dudley, Sr., et al.
No. 54902.
Supreme Court of Mississippi.
August 28, 1985.
*808 James E. Williamson, Joe Clay Hamilton, Meridian, for appellant.
Robert M. Dreyfus, Jr., Goldman, Dreyfus & Primeaux, Meridian, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
The complaint of Eugene Vinson, trustee for Eugene Clint Vincent; and Merchants & Farmers Bank, conservator of Arlene Vinson; filed in the Chancery Court of Lauderdale County, sought both prohibitory and mandatory injunctions for the repair and maintenance of the roof on a building known as the Masonic Temple Building in the City of Meridian, Mississippi. Defendants in the suit were Meridian Masonic Temple Building Association; L.M. Dudley, Sr., and Flora M. Dudley, his wife; Robert Merson; James T. Speed; David Majure; Barbara Robinson; and Broadhead Foundation, Inc.
After a three-day trial, the lower court entered judgment in the sum of one hundred sixty-five thousand dollars ($165,000) in favor of the Vinsons against Broadhead Foundation, Inc., denied the prayer for prohibitory and mandatory injunctions and denied all relief prayed for against the remaining defendants. The Vinsons have appealed to this Court and assign the following errors in the trial below:
(1) The lower court erred in not holding all prior owners liable.
(2) The lower court erred in not holding the defendants Speed, Majure, Robinson and Merson liable.

Facts
On December 28, 1950, Clint Vinson and A.P. Carney, predecessors in title to the appellants, executed a warranty deed conveying the second and third floors of the Masonic Temple Building to the Meridian Masonic Temple Building Association (corporation) which is now defunct and is a nominal defendant in the case. The deed contained the following provision:
Purchasers and their successors in title are to maintain the roof over the said building on the said land that is not sold herein as well as on that which is sold.
The Masonic Temple Building Association conveyed the property by warranty deed on September 30, 1976, to L.M. Dudley, Sr. and Flora Dudley, as joint tenants, with right of survivorship and not as tenants-in-common. The deed contained the following provision:
Grantees assume occupancy and upkeep of said building.
Subsequently, on March 10, 1977, L.M. Dudley, Sr., and Flora Dudley executed a special warranty deed to Bob Merson, James Speed, David Majure and Barbara Robinson conveying the property and including the same provision contained in the 1976 deed, viz, "Grantees assume occupancy and upkeep of said building." Those four appellees conveyed the property to the Broadhead Foundation, a non-profit corporation, on December 19, 1977, with the same provision in that deed.
The building sustained considerable water damage from a leaking roof, which caused tenants on the first floor to vacate spaces rented by them at various times between July, 1980, and November, 1981. Attempts of a sort were made to alleviate the problem, but without success. The crucial factual question is  when did the leaking begin and when was the damage incurred  before or after December 19, 1977? The evidence was conflicting as to *809 exactly when the leaking started and when the damage began to occur.

Law

I.  II.
The covenant involved in this case is a covenant running with the land, which is admitted by the parties. They all agree that the appellants are bound by the covenant which required the purchasers and their successors in title to maintain the roof over the building. Since the covenant runs with the land, a successor in title is liable for breach of that covenant, but only for such breaches which occur during his ownership. 21 C.J.S. Covenants § 86 (1940); 20 Am.Jur.2d Covenants, Conditions, etc. § 25 (1965). Appellees contend that transfer of title terminates liability. Nevertheless, liability exists for breaches and damages occurring during ownership. Appellants concede that there is no liability on the owner where no damage occurs during his ownership, but maintain that when the leak started, all involved were liable.
In a nutshell, after sifting the positions and arguments of the parties, there remains the proposition that (1) if a leak occurred in the roof during the occupancy of an owner without damage, then there was a breach but no damage occurred as a result of the breach, and (2) where damage occurred during an owner's occupancy, then such owner was liable for the breach and the damage during his ownership. That reasoning is borne out by Sexauer v. Wilson, 136 Iowa 357, 113 N.W. 941 (1907), cited by both parties in the present case. In Wilson, there was a covenant for the covenantor/grantee to perpetually maintain a division fence between two properties. The Iowa Court held that ascertaining the intent of the parties is the main inquiry and said:
3. Having found that the covenantor's grantee is bound by the covenant, the next inquiry is whether the covenantor also is liable thereon subsequent to parting with the title. This necessarily depends on the intention of the parties to the first deed. While the covenant is personal in form, this is not controlling, for the deed must have been executed with the understanding that (1) Wilson, the grantee, would have no right to enter on the land after passing title to another in order to repair or replace the fence; (2) that he would enjoy no benefit therefrom; and (3), owing to the nature of the covenant, neither he nor his representatives could perform by maintaining the fence perpetually. Of necessity the grantor most have relied on the land with which the covenant runs to secure its performance, and, fairly construed, Wilson's obligation was to make the fence and maintain it only during the time he owned the land. It could not have been his intention to assume an obligation in perpetuum, and, in event of disposing of the fee, to remain bound for life. On the other hand, the grantor naturally had in mind recourse on those who should own the land when the fence should need repair, rather than this grantee, who might be gone before this would be required. This conclusion seems reasonable, and has the support of Hickey v. Railway, 51 Ohio St. 40, 36 N.E. 672, 23 L.R.A. 396, 46 Am.St.Rep. 545.
113 N.W. at 944.
It reasonably can be said that, fairly construing the covenant, the appellees' obligation was to maintain and repair the roof only during the time they owned the property. In this state, intent of the parties is determined by giving the instrument a fair and just interpretation. Duane v. Saltaformaggio, 455 So.2d 753 (Miss. 1984); Welborn v. Henry, 252 So.2d 779 (Miss. 1971); Rogers v. Morgan, 250 Miss. 9, 164 So.2d 480 (1964); Schaeffer v. Gatling, 243 Miss. 155, 137 So.2d 819 (1962); Mendrop v. Harrell, 233 Miss. 679, 103 So.2d 418 (1958).[1]
The chancellor filed a well-reasoned opinion consisting of thirteen (13) pages, *810 parts of which, pertinent to this decision, follow:
The testimony about the commencement of water damage is inconclusive as to when the damage actually started and when the water actually started leaking through the roof of the building.
... [T]he Court does find that evidence of the roof leaking on the "Masonic Building" had started leaking in some parts of the building prior to December 19, 1977. However, the extent of the leaking and the resulting water damage on December 19, 1977 or when the leaking started was not ascertainable. The only testimony before the Court about the water problems during the year 1977 is that the problem was noticed. The uncontradicted testimony is that the defendant, L.M. Dudley, Sr., and the defendant, Broadhead Foundation, Inc., were the only defendants contacted about the problem and that L.M. Dudley, Sr., referred all inquires to Broadhead Foundation, Inc., and/or Paul Broadhead. The undisputed testimony is that neither the plaintiffs nor the tenants contacted the individual defendants, Flora M. Dudley, Bob Merson, James Speed, David Majure and Barbara Robinson, about the problem until Attorney James E. Williamson mailed the letter dated April 1, 1981 (Exhibit No. 6)... .
* * * * * *
The plaintiffs have cited Volume 5, Restatement of the Law, Property (1944) Section 538, in support of their position, and said section states as follows: `Whether a promise respecting the use of land of the promisor will continue to bind the promisor after he has ceased to have an interest in the land with respect to which the promise was made depends upon the intention manifested in the making of the promise.' The Court found Section 530, Subparagraph c, of the aforesaid Restatement relevant, wherein it is stated: "Become bound as promisors. Under the rules relating to the running of the burden of promises respecting the use of land the successor to the promisor becomes bound, if the promise runs to him, as though he were himself a promisor. This does not mean that he becomes bound in all ways as though he had himself made the promise. During the time that he is a successor he must perform the acts called for by the promise. For failure during that time to perform them he is liable as for a breach of a promise made by him. But he is not responsible as a promisor for any defaults in the performance of the promise which may have occurred before he succeeded to the interest of the promisor in the land with which the promise runs nor is he so liable for defaults which occur after he ceases to have that interest."
After considering the briefs of the plaintiffs and the defendants and the authorities, arguments, and analogies stated therein, and after considering the aforementioned facts and circumstances as to the notice of the water problems by the plaintiffs, the subsequent development of the damages caused by the water problems, the passive actions of the plaintiffs to contact the owners of the "Masonic Building" to obtain relief for the developing water problems and damages, the date that the individual defendants were notified about the water problems and the developing damage, the date of the vacation of the rental offices by the plaintiffs' tenants, the dates of the transfer of the second and third floors of the "Masonic Building" among the individual defendants and the corporate defendant, and the delayed filing of suit by the plaintiffs until April 1, 1982; and after considering the obligations of the plaintiffs and individual defendants as related to the covenant running with the land, the Court finds that the individual defendants, L.M. Dudley, Sr., Flora M. Dudley, Bob Merson, James T. Speed, David Majure, and Mrs. Barbara Robinson are not personally liable to the plaintiffs for the water damage to the first floor of the "Masonic Building". The Court further finds that the intention of the parties in the covenant running with the land as set out in the aforesaid 1950 *811 deed was to obligate the owner of the second and third floors of the "Masonic Building" "to maintain the roof over said building" after the transfer of their interest in said building.
The Court further finds that the defendant, Broadhead Foundation, Inc., has breached the covenant running with the land as said defendant as [sic] failed "to maintain the roof over said building" for the period that the roof was leaking and causing damage to the first floor of the "Masonic Building" and that the plaintiffs have suffered extensive damages because of this defendant's breach of said covenant.
We do not disagree with the chancellor's interpretation of the law relating to covenants running with the land. We are unable to say that the chancellor was manifestly wrong in his finding of fact that the extent of the leaking and the resulting water damage on and prior to December 19, 1977, or when the leaking started was not ascertainable. Our review of the record indicates that the appellants failed to meet their burden of proof in showing that leaking and damage occurred during the period of time that the appellees would have been liable for such damage. Therefore, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Mendrop v. Harrell, supra, held that an affirmative covenant running with the land also creates for its enforcement a charge or lien upon the property.