Pollock, J.
In November, 1899, John McLandsborough entered into a written contract with The Scio Gas Company, by which he granted to said company a right of way for a pipe line to convey gas across his farm in North township, this county. Said contract reads as follows:
“Right of Way
“John McLandsborough to The Scio Gas Company.
“Agreement.
“Know all men that I, John McLandsborough of the County of Harrison and State of Ohio, in consideration of the sum of One Dollar to me in hand paid by the Scio Gas Company of Scio, Ohio, do hereby grant to the said The Scio Gas Company, its successors and assigns, the right to lay and maintain a pipe line for transporting gas across my farm in North township, said county, and described as follows: * * *
“Said line to be laid in a course and at a place on said farm to be agreed upon by the parties hereunto before the same is laid. The said The Scio *126 Gas Company, its successors and assigns, shall have the right to enter the premises described herein at all times to repair and maintain said gas lines.
“It is further agreed that The Scio Gas Co. is to furnish free gas for one fire in the residence of said John McLandsborough, said John McLandsborough making his own connections with said gas line.
“Also all damages to growing crops and to fences caused by laying and maintaining said gas line shall be paid for by The Scio Gas Company.
“It is further agreed that when the Scio Gas Co. shall procure more gas that they will furnish free gas for a second fire under same conditions as above.
“Said gas line shall be buried if so required by John McLandsborough or assigns.”
This contract is signed by the parties, witnessed by two witnesses, acknowledged before a notary public, and duly recorded.
In pursuance of the foregoing, said company soon thereafter laid its line for a considerable distance across said premises, and from this line the said John McLandsborough constructed a domestic line to his residence upon said premises, and gas was furnished, as in said contract provided. In the year 1904 John McLandsborough died, and Seigel McLandsborough, a son, took title to said real estate, by will, and said company continued to furnish gas through said domestic line to said residence. In 1911 The Scio Gas Company sold and assigned said “right of way” to The American Gas company, which continued to furnish gas to said residence. On January 2, 1913, Seigel *127 McLandsborough conveyed said premises to Ina J. McLandsborough, now Ina J. Johnson, the plaintiff herein, and said American Gas Company continued to furnish gas to said residence until the 26th day of May, 1917, when said company disconnected said domestic line and refused longer to furnish gas in said residence, although it and its predecessor had continuously used said right of way since the date of said grant and is still using the same. Soon thereafter a petition was filed in. the court of common pleas of this county, asking that a mandatory injunction issue requiring said company to again connect said domestic line with said main line and to furnish gas to said residence. To this petition an answer was filed, alleging that said contract or “right of way” was merely personal in character between the original parties, and that the covenant as to free gas did not run with the land. To the answer a reply was filed, denying the averments thereof; and so the issue was made up, trial had, and a decree entered granting said mandatory injunction, from which an appeal was taken to this court. The only issue to be determined here is whether the agreement to furnish gas in said residence was a covenant running with the land, or was merely personal, inuring to the benefit of John McLandsborough only. The subject of “covenants running with the land” has elicited a wide range of discussion in this and many other jurisdictions, and in these discussions it has been a subject of much concern whether a covenant concerning a thing not in esse will under any circumstances inure to the benefit of or bind the assignee, and also whether it is necessary to *128 use the words “assigns” or “heirs and assigns” to make a covenant concerning a thing not in esse run with the land. One of the earliest discussions, and possibly the most notable, is found in Spencer’s Case, 5 Coke, 16, and probably no other has attracted more, if quite so much, attention. This contains a series of seven resolutions passed by the judges concerning covenants — which of them run with the land, and which are collateral; where the assignee should be bound, without naming him, and where not; and where he should not be bound though named, and vice versa. The first and second of said resolutions are of interest here. The first reads as follows:
“When the covenant extends to a thing in esse, parcel of the demise, the thing to be done by force of the covenant is quodammodo annexed and appurtenant to the thing demised, and shall go with the land, and shall bind the assignee, although he be not bound by express words; but when the covenant extends to a thing which is not in being at the time of the demise made, it cannot be appurtenant or annexed to the thing which hath no being: as if the lessee covenants to repair the houses demised to him during the term, that is parcel of the contract, and extends to the support of the thing demised, and therefore is quodammodo annexed appurtenant to houses, and shall bind the assignee although he be not bound expressly by the covenant.”
In the instant case the covenant concerns a thing which was not in esse at the time of the demise made, but to be “newly built after,” and therefore would seemingly bind the covenantor and not the *129 assignee, for “the law will not annex the covenant to a thing which hath no being.” This, however, is the provision of said first resolution only.
The second resolution reads as follows:
“It was resolved that in this case, if the lessee had covenanted for him and his assigns, that they would make a new wall upon some part of the thing demised, that for as much as it is to be done upon the land demised, that it should bind the assignee; for although the covenant does extend to a thing to be newly made, yet it is to be made upon the thing demised, and the assignee is to take the benefit of it, and therefore shall bind the assignee by express words.”
Recognizing the inconsistency in the above resolutions, the courts have been gradually abandoning the position that it is necessary to use the word “assigns” to make a covenant concerning a thing not in esse run with the land, and have been coming to regard the intention of the parties, as gathered from the whole instrument, the governing principle, and not the use or meaning of mere technical words. Moreover, it is exceedingly doubtful whether the court so decided in Spencer’s Case.
In the English notes to said case, in 15 English Ruling Cases, 244, it is observed that Anonymous Case (1585) in F. Moore, 159, pi. 300, has been identified and approved as a report of the final determination of Spencer’s Case. It is there stated that the court held:
“Notwithstanding that the covenant lacks words (assigns), yet each, by the acceptance of the possession, has made himself subject to all covenants con *130 cerning the land but not to collateral covenants; and covenants of reparations * * * are covenants inherent to the land, with which the assignee without special words shall be charged.”
The foregoing seems all the more likely to have been the court’s conclusion, in view of the observations of Chief Baron Pollock, speaking for the court of exchequer in Minshull v. Oakes, 2 Hurl. & N., 793, 808, where it is said:
“The explanation may be, that Lord Coke is reporting a variety of arguments and opinions expressed, while Moor gives the ultimate decision.”
Attention is also directed to the fact that the resolutions were never acted on, and that, according to Moore, the decision was the other way, as was that in Smith v. Arnold, 3 Salk., 4.
Therefore, so far as Spencer’s Case is concerned, and it is the notable one in all early jurisprudence, it seems safe to say that the use of “assigns” as a technical word is not now and never has been essential to the running of a covenant with the land at common law.
It is indeed difficult to reconcile the first and second resolutions in Spencer’s Case, and the conclusion must be that many of the courts have practically repudiated the first by following the second, and that the word “assigns” is not necessary to make a covenant concerning a thing not in esse run with the land; and so it is held in Sexauer v. Wilson, 113 N. W. Rep., 941 (136 Ia., 357), in the first paragraph of the syllabus, as follows:
“The use of ‘assigns’ as a technical word has never been essential to the running of a covenant with the land at common law.”
*131 The foregoing is in point with the instant case and is somewhat similar as to facts. The covenant related to a division fence which was not shown by the testimony to be in existence at the time of the execution of the deed; and yet it was held that the word “assigns” was not necessary to create a covenant running with the land.
Again, in the case Doty v. Chattanooga Union Ry. Co., 53 S. W. Rep., 944 (103 Tenn., 564), it is held:
“A deed conveying a right of way for a railroad in consideration of five dollars and an agreement by the grantee to run daily passenger trains on and along the right of way, with provision that, if it is abandoned for nonuser for six months, title shall revert to the grantor, contains a covenant running with the land, as to the running of trains, though the-road was not built when the deed was made, and the word ‘assignee’ is not used; so that a purchaser of the road is liable thereon for a breach subsequent to the purchase, though there had been breach of the covenant before the transfer.”
The foregoing is similar in principle with the case at bar, and somewhat similar as to facts. And holding squarely to the same effect are Denman v. Prince et al., 40 Barb. (N. Y.), 213; Teachout v. Capital Lodge I. O. O. F., 128 Ia., 380, 104 N. W. Rep., 440; Norman v. Wells, 17 Wend. (N. Y.), 136, 149, 150, 153; Beddoe’s Exr. v. Wadsworth, 21 Wend. (N. Y.), 120, and Bally v. Wells, 3 Wils., 25. And in Musury v. Southworth et al., 9 Ohio St., 341, in the third paragraph of the syllabus, it is held:
*132 “3. When such a covenant to insure has for its object a building to be erected after the date of the lease, but which, when erected, is to be used by the lessee, and is an essential ingredient in the agreement of the parties for the creation of the estate, it is not indispensable to make such a covenant run with the land, that 'assignees’ should be expressly named; but the covenant being one which may be annexed to the estate, and run with the land, equivalent words, or a clear intent shown by the whole instrument, may suffice.”
■ The foregoing is supported by the later case of Huston v. The Cincinnati & Zanesville Rd. Co., 21 Ohio St., 235, which was an action to appropriate private property for railroad purposes. After a jury had been impaneled all claim for damages for fencing was withdrawn from the consideration of the jury, upon the agreement of the company to make convenient crossings and forever maintain fences along said right of way across said premises. The landowner conveyed said property to another, who, in turn, conveyed to still another. Said railroad was sold to another company, which refused to maintain said fences. The court held in the second paragraph of the syllabus:
“2. It is an agreement which runs with the land,- so as to be binding as between the assignees or grantees of both parties thereto.”
And yet the words "assigns” or "heirs and assigns” were not used.
Numerous other cases might be cited in support of the general proposition; but, while it is true that some courts have elected to follow the first resolu *133 tion in Spencer’s Case, yet the greater number by far have elected to follow the second.
In determining whether a covenant runs with the land the material inquiries are:
1. Whether the parties meant to charge the land.
2. Whether the burden is one that can be imposed consistently with policy and principle.
It is so held in the second paragraph of the syllabus in the case of Sexauer v. Wilson et al., supra.
In the instant case John McLandsborough received but one dollar consideration for said right of way; beyond question the real consideration was the gas to be furnished for one fire, and two if more gas was procured, and, this, “in the residence of John McLandsborough.” Not to or for John McLandsborough, but in the residence; therefore the name “John McLandsborough” is descriptive of the residence in which the gas was to be furnished. Wherefore, the contention that John McLandsborough being dead the obligation was discharged is not justified. The intention of the parties in the instant case, as disclosed by their conduct, is of some value here in construing their contract. The gas was furnished by The Scio Gas Company to said residence until the death of John McLandsborough, and after his decease to his son, Seigel; it was then furnished by The American Gas Company, the successor of The Scio Gas Company, to Seigel; and, later, to Ina J. McLandsborough Johnson, up until last May; without a question. The parties themselves so construed this contract. The case of Mosier et al. v. Parry, *134 60 Ohio St., 388, is applicable. The first paragraph of the syllabus reads as follows:
“1. Where the language of a contract is of doubtful import, it is proper to ascertain the circumstances which surrounded the parties at the time it was made, the object intended to be accomplished, and the construction which the acts of the parties show they gave to their agreement, in order to give proper construction to the words they have used in the instrument, and to determine its legal effect.”
Likewise, the case of Kling, Admr., v. Bordner, 65 Ohio St., 86, is well in point; also New Pittsburg Coal Co. v. N. Y. Coal Co., 31 C. D., 458, the second paragraph of the syllabus of which reads as follows:
“Evidence showing the practical construction which either party has placed upon a coal mining contract and the acquiescence therein by the other party, may be considered for the purpose of aiding in its proper construction.”
In harmony with the foregoing is M. E. Church Society v. Ashtabula Water Co., 10 C. D., 648, and another case worthy of notice in this connection is Trustees of Cin. So. Ry. v. Porter, 12 N. P., N. S., 353. Resting the interpretation of the contract upon the conduct of the parties, it is conclusively shown that they understood the covenant as to free gas to be one running with the land.
Now as to the second material inquiry, Is the burden one that can be imposed consistently with policy and principle?
As above observed the pecuniary consideration for said “right of way” was one dollar. It could *135 not be successfully maintained for a moment that this, within itself, was a full and fair consideration for the enjoyment of said right by said company or its successors and assigns, so long as they might care to use it. In fact the intention as gathered from said contract is exactly to the contrary, because the covenant as to free gas is inserted, which no doubt was then recognized by all parties as the real consideration, because the one dollar was merely nominal, which negatives the theory that it was the principal consideration, or that it was so considered by the parties, whose conduct clearly indicates that they understood the covenant running with the land to be the principal consideration. And so it is observed by Welch, C. J., speaking for the court in the above case of Huston v. Railroad Co., beginning at page 246, as follows:
“Does the contract run with the land? Undoubtedly it does. It was an agreement to erect structures upon the land appropriated, and to keep them up so long as that was enjoyed.”
That is to say, so long as the right of way was used or enjoyed the fences were to be maintained.
It is also provided in the agreement in the instant case that The Scio Gas Company, its successors and assigns, shall have the right to enter said premises at all times to repair and maintain said gas lines; thereby all the rights granted originally to The Scio Gas Company were saved to its successors and assigns; why not likewise to the owner of the freehold which carries the burden of the easement which the gas company is insisting that it shall continue to carry? It is only fair and reasonable that free gas be furnished in said residence so long *136 as said right of way is enjoyed. And such obligation may be consistently imposed upon the de-fendant company, or its assigns, while it continues to exercise such right. When the defendant company purchased said “right of way” it necessarily acquired it subject to all the conditions imposed, and by its acceptance of the contract was bound by the conditions thereof; and so it is held in Hickey v. L. S. & M. S. Ry. Co., 51 Ohio St., 40, the first paragraph of the syllabus reading as follows :
“1. That the grantee, by accepting the deed, will be deemed to have entered into an express undertaking to perform the condition contained in the deed, and such undertaking will run with the land, and become obligatory upon a subsequent owner by purchase from the grantee of the company.”
It is likewise so held in L. E. & W. Rd. Co. v. Priest, 131 Ind., 413, 31 N. E. Rep., 77; and in Anonymous Case, F. Moore, 159, 300, as above quoted, where it is said that acceptance of possession makes one liable for all covenants, except collateral.
The defendant company knew or is charged with knowledge of this covenant relating to free gas, because said contract is a matter of record in this county (Lease Record 11, pp. 113, 114), and it was the purchaser of said right of way from The Scio Gas Company.
In 11 Cyc., 1080, there is a helpful discussion of “covenants running with the land,” where it is observed as follows:
*137 “In order that a covenant may run with the land, that is, that its benefit or obligation may pass with the ownership, it must respect the thing granted or demised, and the act covenanted to be done or omitted must concern the land or estate conveyed.”
The instant case comes well within the above definition. Further discussion will be found at pages 1051 and 1081.
Further discussion is superfluous here in view of the fact that for eighteen years free gas was furnished in the said John McLandsborough residence by The Scio Gas Company, and its successor, the defendant here, during the occupancy of John McLandsborough, that of his son, and until recently that of his daughter; the defendant company took said right of way with a full knowledge of the conditions; it is still using it and must be bound thereby. The word “assigns” is not necessary or essential in order to make a covenant run with the land, and judgment must therefore be entered for plaintiff.

Judgment for plaintiff.

Farr, J., concurs.