COUNTS et, Plaintiffs-Appellants, v. BALTIMORE & OHIO SOUTHWESTERN RAILROAD COMPANY et, Defendants-Appellees.

Ohio Appeals, Fourth District, Ross County.

No. 472.   Decided January 11, 1961.

*Mr. J. F. Cutright,* for plaintiffs-appellants.

*Messrs. Wilson & Rector* and *Mr. Robert L. Perdue,* for defendant-appellee The Chesapeake and Ohio Railway Company.

*Mr. John S. Phillips,* for defendant-appellee The Baltimore and Ohio Railroad Company.

GILLEN, P. J. This appeal on questions of law is directed to the judgment of the Court of Common Pleas of Ross County, Ohio, sustaining a demurrer to plaintiffs' second amended petition and entering final judgment for defendants, plaintiffs not desiring to plead further. The facts well pleaded in the second amended petition are admitted to be true by the demurrer.

The petition alleges, in substance, that in July, 1879, Henry W. Pepper was the owner of certain land in Section 19, Liberty Township and Sections 29 and 30 in Jefferson Township, Ross County, Ohio. That in July, 1879, he entered into a contract in writing with the Dayton and Southeastern Railroad Company, which is recorded in Vol. 4, page 185, Miscellaneous Records of Ross County, Ohio, whereby said company agreed to purchase and Henry W. Pepper agreed to sell certain parts of said land owned by him for a right of way for the construction of a railroad. Said agreement provided, in part, as follows:

"Said railroad company agrees to construct and maintain for my use necessary cattle guards at my boundary lines and at all crossings through said lands, and also two other crossings for my use on said premises, and one under crossing at a point east of my corn crib, said under crossing to be not less than twelve feet wide and not less than ten feet high. Said company agrees to construct and maintain all necessary fencing along said right of way and to pay me in cash $950.00 before taking possession of said premises."

Henry W. Pepper conveyed to said company, by warranty

deed dated November 7, 1879 and recorded in Vol. 95, page 457, Ross County Deed Records, in accordance with the terms of said contract, the right of way fully described in the petition. That the railroad company built the railroad upon said land, erecting and constructing the crossings, both over and under, in accordance with the provisions of said contract. That Henry W. Pepper, in his lifetime, conveyed the land which he owned through which said railroad built its right of way to his daughter, Lillie E. Counts, who devised said premises to these plaintiffs, who are now the owners of the land formerly owned by Henry W. Pepper, abutting on both sides of the right of way of said railroad, having acquired title thereto on January 22, 1939. That The Baltimore and Ohio Railroad Company is the present owner of the railroad and right of way described above, having acquired title by deed dated August 1, 1899, and recorded in Ross County Deed Records 129, page 91, said deed being the last of a series of conveyances from preceding owners to their vendees beginning with a conveyance by The Dayton and Southeastern Railroad Company. That the under crossing built and constructed by The Dayton and Southeastern Railroad Company is still in existence, extending from one edge of the railroad right of way to the other, generally in an easterly and westerly direction. That it is constructed of concrete and other permanent materials and was built and is used as a means of going from the fields on one side of the railroad right of way to the fields on the other side of said right of way. That the tracks of the railroad pass over the top of said under crossing and the farm traffic passes through the tunnel part of said under crossing. That said railroad right of way divides the farm of these plaintiffs which was formerly owned by Henry W. Pepper so that the approximate acreage on the westerly side is 160 acres and on the easterly side of said right of way is 400 acres. That at all times mentioned in the petition, the owners of the farm land and the right of way were in possession during the term of their ownership. That the farm of plaintiffs is farmed in part by planting in corn, wheat, soy beans, clover and other grass crops. That plaintiffs and their predecessors in title have always raised large amounts of cattle and hogs in the proper utilization of the farm. That it is necessary for the

plaintiffs to use the under crossing several times a day in the operation of the farm.

That defendants have permitted and allowed the under crossing to become so filled up with dirt, debris and other materials, that instead of being ten feet clearance as provided in said contract, it is not more than six feet from the top of the surface of the bottom of the under crossing to the bottom of the top of said structure. That defendants have permitted and allowed the drainage of said under crossing to become so stopped up and congested, that water stands in said under crossing sometimes to a depth of two feet. That in the wintertime this water freezes over so that the livestock will not use said underpass until the ice is broken. That the reduction of the heighth of the under crossing as set forth above makes it impossible for plaintiffs to use said underpass with the machinery now required and used in the proper conducting of farming operations on said farm.

That the right of way aforesaid is owned by The Baltimore and Ohio Railroad Company, and used by The Chesapeake and Ohio Railway Company under some arrangement not known to the plaintiffs, but said right of way is used by the defendants jointly.

That approximately ten years ago defendants cleaned out said under crossing so that it was ten feet high but have allowed and permitted the dirt and debris to again accumulate so that it is now less than seven feet high. That at the same time they excavated a pond or sump to drain the water from said underpass, but said drain has become clogged and stopped up so that the water stands in said under crossing up to two feet in depth. That approximately five years ago, defendants lengthened said pond or sump but the drainage system so constructed by defendants still does not drain said under crossing so that said under crossing has water and mud in it at all times, causing said under crossing to be impassable after a rain for several days and difficult of crossing 'at all times. That the agreement between the Dayton and Southeastern Railroad Company and Henry W. Pepper aforesaid created a covenant which ran with the land. The prayer of the petition requests a court order requiring defendants to remove the dirt, water and debris

from said under crossing so that it will be ten feet in heighth and that adequate drainage facilities be provided.

The contract entered into by and between Henry W. Pepper and The Dayton and Southeastern Railroad Company dated July, 1879, relating to the construction and maintenance of the underpass in question does not contain the words "successors or assigns" and the terms of the contract are not set forth or referred to in the deed of conveyance dated November 7, 1879.

It is urged that the recording of the contract in the miscellaneous Records of Ross County, Ohio, was not sufficient to give notice of the existence of such contract and that the language used therein was not sufficient to create a covenant running with the land. It is not always necessary to use the words "successors or assigns" in an instrument in order to create such a covenant. This rule was first announced in this state in the case of *Masury* v. *Southworth*, 9 Ohio St., 341, although in that case the court did say that the instrument should contain equivalent words to show the intent of the parties. It is said in the case of *Johnson* v. *The American Gas Co.*, 8 Ohio App., 124, that:

"1. The use of the words 'assigns' or 'heirs and assigns' is not necessary or essential to create a covenant running with the land, and in determining whether a covenant will run with the land the material inquiries are whether the parties intended to impose such burden on the land, and whether it is one that may be imposed consistently with principle and equity."

In the court's opinion in the case of *Railway* v. *Bosworth*, 46 Ohio St., 81, on pages 86 and 87, the court said:

"An owner may subject his lands to any servitude, and transmit them to others charged with the same; and one taking the title to lands, with notice of any equity attached thereto, or any outstanding right or claim affecting the title or the use and enjoyment of the lands, takes subject to such equities, and such right or claim, and stands in the place of his grantor, bound to do or forbear to do whatever he would have been bound to do or forbear to do." Allen J., in *Trustees* v. *Lynch*, 70 N. Y., 449. In equity, the precise form of the covenant or agreement is immaterial, if the intention is reasonably clear. Thus, it is said: "It is not essential that it should run with the land

at law. A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as an assignee of the party who made the agreement, but because he had taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform." *Whitney* v. *Union Ry. Co.*, 11 Gray, 364. Bigelow, J.

On page 88 of the opinion, the court said:

"There must be some visible material object upon or connected with the land, the sight or knowledge of which would reasonably suggest the existence of the right to constitute constructive notice."

In this case the court refused to grant the relief sought because no such object existed.

In the case at bar The Dayton and Southeastern Railroad Company entered into a contract requiring it to construct and maintain the underpass for the benefit of the landowner, Henry W. Pepper. The petition alleges that, after acquiring title to the right of way, the company did construct and maintain the underpass pursuant to the contract notwithstanding the fact that the deed of conveyance contained no words setting forth that obligation. The underpass was constructed of concrete and other permanent materials twelve feet in width with a clearance of ten feet and was used as a means of going from the fields on one side of the railroad right of way to the fields on the other side of said right of way. It was in existence at the time the Baltimore and Ohio Railroad Company acquired title to the right of way August 1, 1899, and has been used by plaintiffs and their predecessors in title in the manner described in the petition ever since its construction. Certainly a structure so obvious, being a part of the right of way, was sufficient to apprise defendants of the existence of some covenant. According to the petition defendants, on two occasions, made some effort to clean out the debris and provide drainage for the underpass. Their effort in this respect was acknowledgement in some degree of their obligation.

A factual situation very similar to the one under consideration is found in the case of *Lowe* v. *W. L. & E. Railway Co.*, 5 O. C. D., 85. There the court said, in part:

"L owning a farm through which a railway company desired to construct a railroad, executed a contract in 1880 whereby he agreed to convey to said company a right of way upon condition that said company construct an under cattle pass, connecting the portions of the farm divided by the railroad. In 1883, after the construction of the cattle pass, L conveyed to the railway company a right of way across his farm; the deed was without reservation and contained no reference to the cattle pass. The railroad was subsequently sold under foreclosure proceedings and the purchaser sought to fill up the cattle pass which had remained in possession of L and his heirs from the time of its construction, claiming that the contract for its construction having been recorded in a record of deeds was of no effect in giving to subsequent purchasers notice of L's right under it; and that possession of land retained by the grantor after he had made a deed, conveying the land, is not notice to any purchaser who takes from his grantee:

"*Held*, that L's possession was not inconsistent with his deed to the railway company of a right of way and that therefore, under the general rule that the possession of lands by a person is constructive notice of whatever right he actually has in the lands, his possession was notice to those who subsequently dealt with the land in question; that whether or not the railway company could be required to maintain the cattle pass, the original contract providing only for its construction, it had no right to fill it up."

While it is true that the court did not say that it was the duty of the railroad company to maintain the underpass, an examination of the case shows that that issue was not before the court. The relief sought was merely an order preventing the company from filling up the underpass. It should also be pointed out that the original contract merely required the company to construct the underpass.

Although counsel for defendants in the instant case admits in his brief that plaintiffs had the right to use the underpass, it is urged that such right did not impose upon defendants a duty to maintain it and provide adequate drainage. The original contract not only required the purchaser of the right of way to construct and maintain the underpass but also speci-

fied the dimensions thereof to be twelve feet in width with a clearance of ten feet from top to bottom. The purchaser of the right of way constructed the underpass pursuant to that agreement and it has been in existence ever since. It provided sufficient constructive notice to the present owner of the right of way at the time of purchase that some covenant running with the land was in existence. At least on two occasions, according to the petition, defendants sought to clean out the debris and provide drainage. Under such circumstances it cannot be said that defendants did not know of the existence of the covenant and the duties imposed thereby. In our opinion the allegations of the second amended petition are sufficient to constitute a cause of action requiring defendants to maintain the underpass in a manner commensurate with the original agreement. For that reason the judgment of the court below will be reversed and the cause remanded.

Judgment reversed and cause remanded.

RADCLIFF and COLLIER, JJ., concur.