Keith YAGER, Appellee,

v.

FARMERS' MUTUAL TELEPHONE COMPANY and the Farmers' Mutual Telephone Company of Riceville, Iowa, Appellants.

No. 66501.

Supreme Court of Iowa.

Aug. 25, 1982.

M. D. Allison, Rockford, for appellants.

Keith A. McKinley of Dunkelberg, McKinley & Folkers, Osage, for appellee.

Considered by REYNOLDSON, C. J., and HARRIS, McCORMICK, LARSON, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

Defendant telephone companies appeal from a declaratory judgment decree awarding plaintiff employee $20,172.42 in retirement benefits as third-party beneficiary of a purchase contract under which one company purchased all the stock of the other. We affirm.

This case was tried in equity, thus we review it de novo. *Citizens Savings Bank v. Sac City State Bank*, 315 N.W.2d 20, 24 (Iowa 1982). There was little dispute

about the facts; those set out below comport with trial court's findings.

The Farmers' Telephone Company of Riceville (Riceville) had been owned by the Pearce family since 1944. In the fall of 1976 they opened negotiations with Farmers' Mutual Telephone Company (Rockford) for the sale of their stock. On April 1, 1977, a final "Installment Contract" for the stock sale was executed. It contained the following provision:

The Purchaser shall retain and continue to employ the present employees of The Farmers' Telephone Company of Riceville, Iowa, except Clifford C. Pearce. Purchaser shall have the right to discharge said employees or terminate their employment for good cause shown or upon the failure of any of said employees to satisfactorily perform the duties required by Purchaser.

. . . .

All of the aforesaid employees of The Farmers' Telephone Company of Riceville, Iowa, shall be covered by the medical and retirement plan of the Purchaser and the years of service of each of said employees with The Farmers' Telephone Company of Riceville, Iowa, shall be considered as years of employment with the Purchaser for purposes of determining retirement eligibility and benefits.

Rockford never disclosed this provision of the contract to Equitable of Iowa, which provided Rockford's employee retirement plan, funded by insurance policies. Thus Equitable simply wrote a separate and essentially identical plan for the Riceville employees. Under it, the benefits would be the same as those enjoyed by the Rockford employees upon retirement or death before retirement. In the event of a prior termination, however, a vested Riceville employee would not receive the same surrender value because Rockford company only paid premiums for the Riceville employees from 1977, ignoring their prior years of service.

A senior plan analyst for Equitable testified in substance that the plan provided for the Riceville employees did not provide the termination benefits Rockford employees with the same years of service would receive under the Rockford plan. To bring the Riceville employees into equality in this regard would have required a departure from the "prototype approach" of the Rockford plan. The plan could not have been made to accommodate the Riceville employees "without substantial amendments" that would involve "considerable expense." Contributions would have been required for prior years of service and the funding method changed.

October 31, 1979, plaintiff Yager was terminated as a Riceville employee. Although his employment had commenced July 1, 1960, he first was informed he had no benefits under the retirement plan. Later, after Equitable was informed of the installment contract terms, Laudner, a Rockford executive designated as plan administrator, declared plaintiff's rights vested. The latter then was offered approximately $5200. All parties agree that had plaintiff been a Rockford employee during the same period, his plan benefit on termination would be $20,172.42.

Trial court, construing the contract, held Yager was a third-party beneficiary of the companies' installment contract; that upon termination he was entitled to the same benefits he would have received had he been a Rockford employee during his years of service. The court awarded Yager judgment against the defendant companies for $20,172.42. Defendant companies argue the court's ruling awarded benefits to Yager that went beyond the contract terms, were not contemplated by the parties, and penalized the companies for failing to adopt a pension and retirement plan substantially different from the plan for Rockford employees. They assert it was impossible to provide the benefits Yager claims under the plan Rockford had provided for its employees.

I. The companies assert the installment contract stated the parties' intentions unambiguously and the contract did not require that substantial changes be made in the Rockford plan. Specifically, they reason that "[t]he wording did not require the

establishment of some different type of pension and retirement plan nor did it require that fundamental and substantive changes to the [Rockford] plan be made; rather the employees of Riceville were to be covered by the [Rockford] plan whatever the provisions of that [Rockford] plan might have been."

Several problems arise from this approach. It is plain that even though the Riceville employees were to be covered by the Rockford plan, they never were. Thus the contract was breached. Although the companies argue the contract is unambiguous and the parties' intent should be determined by what the contract itself says, citing Iowa Rule of Appellate Procedure 14(f)(14), they attempt to define what the contract says by excluding what it does not say. If, however, the contract can be understood only by examining what it does not say, it is not unambiguous. See McCarthy v. McCarthy, 162 N.W.2d 444, 448 (Iowa 1968) (ambiguous means, "of doubtful nature or meaning," "uncertain" or "equivocal").

The evidence before the trial court fully supported its finding that the contracting parties intended Riceville employees be accorded equality with the Rockford employees. We consider this oral evidence not to vary or contradict the writing but as

[e]xtrinsic evidence that throws light on the situation of the parties, the antecedent negotiations, the attendant circumstances and the objects they were thereby striving to attain [in order to] ascertain the actual significance and proper legal meaning of the agreement.

Hamilton v. Wosepka, 261 Iowa 299, 306, 154 N.W.2d 164, 168 (1967).

Donald Pearce, employee and stockholder of Riceville, testified, "I knew that the Rockford Telephone Company had some kind of a funded retirement plan. We didn't have anything at that time and we wanted our employees to be equal under the plan the same as their employees were."

Laudner, executive officer and principal negotiator for Rockford company, understood the contract as providing that "we would take them under any existing plan we had and treat them as though their service had been service with our company." He further testified that he assured "the Pearces that these people were going to be treated on an equal basis" with the Rockford employees. We hold the contracting parties intended to extend all the plan benefits accorded Rockford employees to the Riceville employees, that this is what they meant by what they did say in the contract, and we so interpret that instrument.

It is true, as defendant companies argue, that the details of the Rockford plan were not discussed during the sale negotiations. Thus we must determine who takes the risk that this termination benefit issue would arise: Rockford or the Riceville employees. The record clearly discloses the following: (1) the contract was written; (2) Rockford was represented by counsel throughout the negotiation of the contract; (3) the negotiation extended for months, providing ample opportunity for Rockford to bargain for specific terms concerning the retirement plan; (4) almost one million dollars was involved, indicating that Rockford must have considered what it was doing. These circumstances dictate that the risk of this omission must fall on Rockford, not Yager. Rockford cannot take the position it should not be penalized for failing to change its plan if that is in effect what it agreed to do, unless changing the plan would be "impossible."

II. The companies mix their impossibility defense with a substantial performance defense. The latter defense might have validity if the issue before us involved benefits on death or retirement, because in those circumstances the benefits would have been comparable. In this case, however, the issue is early termination, and the evidence discloses Yager is not being treated the same as a seventeen-year Rockford employee.[1]

---

1. Defendant companies do not claim that the cash payout on termination is not a benefit of

the retirement plan under the terms of the contract.

Impossibility is not a defense when a contingency that reasonably may have been anticipated was not provided for in the contract. *Associated Grocers v. West*, 297 N.W.2d 103, 108 (Iowa 1980); *Nora Springs Cooperative Co. v. Brandau*, 247 N.W.2d 744, 747 (Iowa 1976). These contracting parties reasonably could have anticipated that one of Riceville's employees might quit or be terminated before he or she died or retired. The mere fact that performance becomes economically burdensome does not excuse performance unless the unforeseen contingency alters the essential nature of the performance. *West*, 297 N.W.2d at 108; *Nora Springs*, 247 N.W.2d at 748. The contingency here was not unforeseeable and did not alter the nature of the contract.

The judgment of the district court is affirmed.

AFFIRMED.