# IN THE COURT OF APPEALS OF IOWA

No. 20-0831
Filed November 3, 2021

**JASON BAILEY,**

Plaintiff-Appellant,

**vs.**

**SADLER BROTHERS GENERAL PARTNERSHIP, SADLER BROTHERS PROPERTIES, LLC, ROY T. SADLER REVOCABLE TRUST, MYRNA P. SADLER REVOCABLE TRUST, and GRANDMA SADLERS'S PROPERTY, LLC,**

Defendants-Appellees.

_____

Appeal from the Iowa District Court for Linn County, Jason D. Besler, Judge.

Jason Bailey appeals from a district court ruling denying his request for declaratory relief and order for specific performance. **AFFIRMED AND REMANDED.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Molly Parker and Megan R. Merritt of Shuttleworth & Ingersoll, Cedar Rapids, for appellees.

Considered by Tabor, P.J., Mullins, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GAMBLE, Senior Judge.**

Jason Bailey appeals from a district court ruling denying his request for declaratory relief and order for specific performance. Sadler Brothers General Partnership; Sadler Brothers Properties, LLC; Roy T. Sadler Revocable Trust; Myrna P. Sadler Revocable Trust; and Grandma Sadler's Property LLC (collectively Sadlers) seek appellate attorney fees. We affirm and remand to the district court to determine reasonable appellate attorney fees.

**I. Background Facts and Prior Proceedings**

An epic flood swamped Cedar Rapids in 2008. The city adopted a flood-control-system master plan in response. The city planned to purchase land on the unprotected side of the flood control system by voluntary sale or mandatory acquisition through eminent domain.

Sadlers owned three parcels of land and buildings (properties) on the unprotected side of the proposed flood control system. In November 2008, Bailey[1] purchased the properties from Sadlers by two installment contracts that were identical with exception to the land described in the contracts. The contracts provided that Bailey would make monthly payments over ten years followed by a balloon payment on November 10, 2018. And because of the properties' location, the parties anticipated the city might purchase the properties during the ten-year installment period, so they included a contract provision detailing how they would split any profit or loss from a sale to the city.[2] The contracts provided that after

---

[1] Jason Beauregard and Bailey purchased the properties together. But Beauregard subsequently transferred his interests to Bailey.
[2] The contracts included the following special provision:

Bailey paid all money and interest due under the contracts, then Sadlers would deliver the warranty deeds and abstracts showing merchantable title.[3] The contracts also included forfeiture clauses permitting Sadlers to cancel the contracts if, among other things, Bailey "fail[ed] to make the payments aforesaid, or any part thereof, as same bec[a]me due."

Bailey made his monthly payments and maintained the properties as required by the contracts. In 2014, the city contacted the parties and inquired

---

> If the property is bought by a governmental entity due to flooding concerns, the proceeds from such a buyout will be allocated first to payoff of this contract, then to reimburse [b]uyers for improvements made to the property subsequent to the execution and delivery of this contract, with any additional proceeds to be split equally between the [s]ellers and [b]uyers. If buyout proceeds are less than the contract balance, the deficiency will be split equally between the [s]ellers and [b]uyers.

[3] The contracts provided:

> If all said sums of money and interest are paid to [s]ellers during the life of this contract, and all other agreements for performance by [b]uyers have been complied with, [s]ellers will execute and deliver to [b]uyers a warranty [d]eed conveying said premises in fee simple pursuant to and in conformity with this contract and [s]ellers will at this time deliver to [b]uyers an abstract showing merchantable title, in conformity with this contract. Such abstract shall begin with the government patent (unless pursuant to the Iowa State Bar Association title standards there is a lesser requirement as to period of abstracting) to said premises and shall show title thereto in [s]ellers as of the date of this contract; or as of such earlier date if and as designated in the next sentence. This contract supersedes the previous written offer of [b]uyers to buy the above described property which was accepted by [s]ellers on the 16th day of October, 2008. Sellers shall also pay the cost of any abstracting due to any act or change in the personal affairs of [s]ellers resulting in a change of title by operation of law or otherwise. If any personal property is a part of this agreement, then upon due performance by [b]uyers, [s]ellers shall execute and deliver a [b]ill of [s]ale consistent with the terms of this contract. Sellers shall pay all taxes on any such personal property payable in 2008, and all taxes thereon payable prior thereto.

about purchasing the properties. For a number of years, the city, Bailey, and Sadlers negotiated the potential sale of the properties. Sadlers and Bailey had the property appraised. Bailey expressed a willingness to sell to the city for the appraised value with the contingent of moving out in early 2019. On February 15, 2018, Bailey's attorney asked the city's representative to forward a draft purchase agreement. The city sent purchase agreements to Bailey consistent with their discussions. The city's cover letter informed Bailey, "If you do not accept the offer, the City wishes to continue negotiating with you regarding the purchase of your propert[ies]. Ultimately, the propert[ies] may be acquired in an eminent domain proceeding if we cannot agree to the terms of the purchase within a reasonable time."

Sadlers were concerned delay may lead the city to acquire the properties through eminent domain at a lower price. By April 2018, Sadlers and the city had come to an agreement on the sale for its appraised value and awaited Bailey's response. Bailey decided not to sell to the city. But he never informed the city or Sadlers that he had decided not to sign the purchase agreements. He just asked his attorney "to hold off on doing any more work on this for now." In response, Sadlers notified Bailey that delay would not allow him to avoid the contractual profit split and demanded they proceed to closing.

As the balloon payment due date, November 10, 2018, approached, Thomas Sadler contacted Bailey to confirm Bailey would be able to tender the balloon payment and offered to negotiate an extension if needed. But Bailey never indicated he required an extension of time. Bailey's attorney contacted Sadlers' attorney to confirm the amount of the balloon payments and confirmed the

November 10 due date. Bailey requested an updated abstract so he could obtain financing needed to make the balloon payment as required by the contract. Sadlers' attorney responded with the total amount required for the balloon payments and also stated the amount she believed the Sadlers would be entitled to upon the sale of the properties to the city. She offered to provide extended abstracts if Bailey would provide proof of financial ability to make the required payments.[4] She also noted "that the deeds in fulfilment of the contracts will include a notation regarding the Sadler entities' reservation of rights to their share of the proceeds from the sale of the properties to the City of Cedar Rapids pursuant to the terms of the installment contracts." Bailey hired new counsel who demanded delivery of the abstracts and stated, "If the abstracts are not provided, Mr. Bailey will offset against the balances due under the contracts the cost of making new abstracts."

Bailey did not sign the purchase agreements. November 10 came and went. But Bailey did not tender the balloon payments to Sadlers. So Sadlers initiated forfeiture proceedings in accordance with the contracts' forfeiture clauses. The notice of forfeiture itemized the amounts in default including (a) the balloon payment and (b) the profit split; and it included a thirty-day right to cure. Again, Bailey did not tender the balloon payment.

In Bailey's opinion, the profit split was not due because he had not sold the properties to the city. So Bailey responded by filing this action for specific performance, declaratory judgment, and an injunction. Bailey asked the court to

---

[4] The contracts explicitly provided that the abstracts would be delivered to Bailey after he paid all amounts due under the contract.

declare that the profit split provision of the contract did not survive the delivery of a warranty deed and, upon payment of the purchase price, Bailey is entitled to a warranty deed in fee simple. He requested an order of specific performance requiring Sadlers to deliver the abstracts and upon tender of the balloon payment to deliver the warranty deed. Sadlers filed a counterclaim alleging Bailey breached the contracts by failing to make the balloon payment. The district court granted a preliminary injunction with respect to the forfeiture proceedings. And this matter went before the district court for trial.

The district court found Bailey breached the contracts and denied his request for specific performance and declaratory judgment. It also determined Sadlers "are entitled to forfeit both contracts" and "dissolved" the prior injunction so it was "no longer in force and effect." Bailey moved to reconsider, enlarge, or amend the court's findings. The court denied the motion. Bailey appeals.

**II. Standard of Review**

The parties disagree as to our standard of review. Bailey initiated this case as a declaratory judgment action. "The court's review of a declaratory judgment action depends upon how the action was tried to district court." *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 178 (Iowa 2010). "To determine the proper standard of review, we consider the 'pleadings, relief sought, and nature of the case [to] determine whether a declaratory judgment action is legal or equitable.'" *Id.* (alteration in original) (citation omitted). "Where there is uncertainty, a litmus test we have applied is whether evidentiary objections were ruled on by the trial court." *Id.* (citation omitted). "If so, the action is one in law." *Id.* Here, the court ruled in evidentiary objections, suggesting this is an action at law. Moreover, at its core,

this is a contract case. And "[g]enerally, an action on contract is treated as one at law." *Id.* (citation omitted). So we conclude this "case was tried at law, and the scope of review is for errors at law." *Id.* at 179. "Under this standard of review, the trial court's findings carry the force of a special verdict and are binding if supported by substantial evidence." *Id.* "We are not, however, bound by the trial court's legal conclusions." *Id.*

## III. Discussion

Bailey claims the district court should have "granted declaratory relief to determine his obligations under the contracts" and "ordered specific performance" because Sadlers "refused to provide [the] warranty deeds in exchange for the balloon payments" and "insisted on additional payments based on a condition that had not occurred." The crux of his claim is based on the contention that "Sadlers made clear they would not accept the balloon payments." So he reasons he was left with no other option than to seek declaratory relief and specific performance from the court.

But Bailey's claim is flawed at its root. Since Bailey did not tender the balloon payment, his speculation that Sadlers would not have accepted it is purely hypothetical. And we find no evidence in the record to support Bailey's contention that Sadlers refused to provide the warranty deeds in exchange for the balloon payments. Sadlers maintained their belief the city would buy out the properties and they were entitled to the profit split. They believed the sale was imminent, and Bailey never told them it wasn't. So on October 28, 2018, Sadlers informed Bailey that if he would submit proof of financial ability to pay the amounts due under the contracts, they would extend the abstracts and forward draft deeds in fulfillment of

the contract noting a reservation of rights to their share of the profit split. Bailey did not submit a commitment letter until well after the balloon payments were due. Instead, it is clear that Bailey never attempted to tender the balloon payments to Sadlers and he breached the contracts.[5] Bailey was not entitled to declaratory judgment. *See SDG Macerich Properties, L.P. v. Stanek Inc.*, 648 N.W.2d 581, 589 (Iowa 2002) ("[E]quitable relief [such as declaratory judgment] is not available for a commercial party who, through its own carelessness, failed to timely exercise its option to renew a lease agreement."). Likewise, Bailey was not entitled to specific performance. *See Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 697 (Iowa 2020) ("Another circumstance precluding specific performance is when the party seeking specific performance has not acted in good faith or performed its obligations."), *reh'g denied* (Feb. 26, 2020).

This case turns on Bailey's breach of the contracts. And, as Sadlers point out, Bailey's breach is not excused. Sadlers did not prevent Baily's performance. We recognize "if one party to a contract prevents the other from performing a condition or fails to cooperate to allow the condition to be satisfied, the other party is excused from showing compliance with the condition." *Emp. Benefits Plus, Inc. v. Des Moines Gen. Hosp.*, 535 N.W.2d 149, 155 (Iowa Ct. App. 1995). And it is true Sadlers also sought payment of their portion of any proceeds from a sale to the city. But no record evidence shows Sadlers would only accept the balloon payments if they were coupled with proceeds from a sale to the city. Instead, the evidence suggests Sadlers would have accepted the payment and preserved the

---

[5] In his reply brief, Bailey "admits he breached the contracts and . . . he never paid the balloon payments."

issue of the profit split for later resolution. Thomas Sadler testified Bailey never offered to make the balloon payment. If he had, Thomas testified the monies would have been placed in escrow and deeds would not have been given until the courts made a decision on the profit split. Thomas believed Bailey would go forward with the sale to the city because the alternative was eminent domain, and Thomas wanted to preserve Sadlers right to the profit split in the event Bailey signed the purchase agreements because he believed the split of the profits was part of Bailey's obligations under the contracts. And, as noted above, Sadlers' lawyer offered to tender the deeds in fulfillment of the contract with a reservation of rights to preserve the profit-split issue. So we conclude Sadlers did not prevent Bailey from making the balloon payments by demanding payment of the profit split from a sale they reasonably believed was imminent.[6] Bailey was free to do so, and the profit split issue would be decided later.

Similarly, Sadlers did not prevent Bailey from making the balloon payments by not providing him with the abstracts of title to assist him in securing financing for the balloon payments. The contracts specifically stated the abstracts would only be delivered after Bailey paid all amounts due by the contract. Nevertheless,

---

[6] The district court noted

> Thomas Sadler states in his deposition that it "might have been clear into September, October, that—that the deal wasn't going to happen. I think, because Jason [Bailey] turned around and rented—rented the property that he had purchased into so." The court additionally notes, however, when asked whether he believed Mr. Bailey intended to go forward with the sale of this property to the city he responded with "Yes, I did." It is clear from the entire context of his testimony the defendants believed the plaintiff was planning to [sell] the properties, but dragging the matter out so as to avoid paying them their share of the proceeds under the contracts.

(Record citation omitted.) This finding is supported by substantial evidence.

Sadlers offered to provide extended abstracts to Bailey in exchange for a financial commitment letter. And Bailey had a decade to secure financing for the balloon payments. Bailey claims he was ready, willing, and able to perform. He had a loan proposal from one bank subject to underwriting and loan committee approval. He was in discussions with another bank but did not receive a loan commitment until after he defaulted. In order to speed up the process, Bailey could have ordered new abstracts, as his lawyer threatened, yet he chose not to do so. *See Yager v. Farmers' Mut. Tel. Co.*, 323 N.W.2d 245, 249 (Iowa 1982) ("The mere fact that performance becomes economically burdensome does not excuse performance unless the unforeseen contingency alters the essential nature of the performance.").

So Bailey breached the contracts by failing to pay the balloon payments eliminating Sadlers' obligation to deliver the warranty deeds to him. *See Van Oort Constr. Co., Inc. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684, 692–93 (Iowa 1999) (holding the defendant did not breach a contract by non-performance when the plaintiff had already materially breached the parties' contract); *see also* Restatement (Second) of Contracts § 237 cmt. a (Am L. Inst. 1981) ("A material failure of performance has, under this Section, these effects of the other party's remaining duties of performance with respect to the exchange. It prevents performance of those duties from becoming due, at least temporarily, and it discharges those duties if it has not been cured during the time in which performance can occur."). Bailey's failure to perform was material. He had an opportunity to cure and failed to even tender a payment. So the district court could not order specific performance requiring Sadlers deliver the warranty deeds to

Bailey when they were no longer bound to do so under the contracts. *See Foft v. Page*, 245 N.W.2d 312, 315 (Iowa 1932) ("In other words, the vendor, in a contract specifically requiring the vendee to first pay before getting deed, need only get himself in readiness to perform, and need make no tender until payment is made or offered by the vendee, and the vendor is not in default until this is done.").

Moreover, Bailey's failure to make the balloon payments triggered the forfeiture clauses in the contracts. The forfeiture clauses provided:

> If [Bailey] (a) fail to make the payments aforesaid, or any part thereof, as same become due; . . . then [Sadlers], in addition to any and all other legal and equitable remedies which they may have, at their option, may proceed to forfeit and cancel this contract as provided by law (Chapter 656 Code of Iowa). Upon completion of such forfeiture [Bailey] shall have no right of reclamation or compensation for money paid, or improvements made; but such payments and/or improvements if any shall be retained and kept by [Sadlers] as compensation for the use of said property, and/or as liquidated damages for breach of this contract; and upon completion of such forfeiture, if [Bailey,] or any other person or persons shall be in possession of said real estate or any part thereof, such party or parties in possession shall at once peacefully remove therefrom, or failing to do so may be treated as tenants holding over, unlawfully after the expiration of a lease, and may accordingly be ousted and removed as such as provided by law.

Sadlers initiated forfeiture proceedings upon Bailey's failure to pay the balloon payments. And the district court determined it was equitable to permit the forfeiture process to proceed given the facts of this case. Bailey does not squarely appeal that ruling.[7] And even if he did, we agree with the district court's reasoning:

---

[7] Bailey does argue because Sadlers sent him notice to pay the property taxes, as required by the contract, after they initiated forfeiture proceedings that they effectively waived forfeiture. We disagree. The taxes came due while Bailey was still in possession of the properties during this litigation. So, like the district court, we think this was reasonable and did not run contrary to Sadlers' intent to pursue forfeiture under the contract.

> The court finds it is equitable to allow the forfeiture of both contracts to continue, pursuant to the terms of the contracts, given the facts and circumstances of this case. [Bailey] breached both contracts with [Sadlers] by not making the balloon payments when required. [Bailey] had ample opportunity to make the balloon payments. There is no equitable doctrine allowing the court to ignore the breach by [Bailey] and not enforce the contracts as they were written. [Sadlers] properly placed [Bailey] on notice of the forfeiture, [Bailey] did not cure the breach, [Sadlers] would have accepted the balloon payments from [Bailey] if he had tendered payments, and there was no waiver of the forfeiture by [Sadlers]. [Sadlers] also acted in good faith with [Bailey] throughout their dealings. [Bailey] has also been allowed to remain in the properties for over a year since breaching the contracts. In addition, the contracts themselves provide in the event of a breach prior payments shall be retained by [Sadlers] as compensation for the use of the property or as liquidated damages for the breach of the contract. The court finds the amount paid is equitable for [Sadlers] to retain for [Bailey]'s use of the properties and as liquidated damages for [Bailey]'s breach of the contracts. Consequently, the court finds [Bailey] breached both contracts with [Sadlers], has not cured his breach of the contracts, it is equitable to allow [Sadlers] their contractual remedy to forfeit both contracts, and allowing the forfeiture to proceed is equitable under the facts and circumstances of this case.

So the court could not then enter a declaratory judgment clarifying what remaining amounts Bailey needed to pay under the contracts and order Sadlers to deliver the warranty deeds and abstracts upon payment. The ship had already sailed too far down river.

The district court's findings of fact are supported by substantial evidence. There was no error of law. Accordingly, we conclude the district court properly denied Bailey's request for specific performance and declaratory judgment and properly dissolved the temporary injunction on forfeiture.

Finally, we address Sadlers' request for appellate attorney fees. "Generally, attorney fees are not allowable unless authorized by statute or contractual agreement." *FNBC Iowa, Inc. v. Jennessey Group, L.L.C.*, 759 N.W.2d 808, 810

(Iowa 2008). Iowa Code section 625.22 (2018) directs the court to "allow and tax as part of the costs a reasonable attorney fee to be determined by the court" "[w]hen judgment is recovered upon a written contract containing an agreement to pay an attorney fee." "A written contract must contain a clear and express provision regarding attorney fees and litigation expenses in order for a court to be authorized to add attorney fees and litigation expenses to a favorable judgment." *FNBC, Inc.*, 759 N.W.2d at 810.

Here, the contracts included the following provision:

> ATTORNEY FEES. In case of any action, or in any proceedings in any [c]ourt to collect any sums payable or secured herein, or to protect the lien or title herein of [s]ellers, or in any other case permitted by law in which attorney's fees may be collected from [b]uyers, or imposed upon them, or upon the above described property, [b]uyers agree to pay reasonable attorneys' fees.

This is a clear and express provision authorizing the award of attorney fees. So in conformity with this provision, we award Sadlers reasonable appellate attorney fees. However, the "record is insufficient to determine a reasonable appellate attorney fee award." *Soults Farms Inc. v. Schafer*, 797 N.W.2d 92, 111 (Iowa 2011). Therefore we remand to the district court to determine the amount of appellate attorney fees. *See id.*

**AFFIRMED AND REMANDED.**